F. C. BOWERS, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 12844.

United States Court of Appeals Sixth Circuit.

April 26, 1957.

N. A. Cobb, Battle Creek, Mich., Howard E. Wilder, Battle Creek, Mich., on brief, for petitioner.

Helen A. Buckley, Washington, D. C., Charles K. Rice, Lee A. Jackson, John Potts Barnes, and Harry Baum, Washington, D. C., on brief, for respondent.

Before SIMONS, Chief Judge, ALBERT LEE STEPHENS of Ninth Circuit,* and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Petitioner seeks the allowance, as a deduction for income tax purposes, of a

* Sitting by designation.

fee paid to his attorneys in divorce proceedings. He claims that he is entitled to such deduction as an expense incurred to conserve and maintain income-producing property, in accordance with Section 23(a) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (2),[1] which was in effect at the time the divorce proceedings occurred and the legal fees paid.

The Commissioner determined that the attorney fee represented personal expense in connection with the divorce proceedings, arising out of petitioner's marital obligations; that such expense is not allowable as a deduction under Section 24(a) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 24(a) (1);[2] and the Tax Court sustained the determination of the Commissioner.

The total fee which petitioner paid to his lawyers was $60,000. It is conceded that $15,000 of this fee was a nondeductible personal expense under Section 24(a). No question, therefore, arises as to that amount, but petitioner contends that $45,000 of the total fee was deductible under Section 23(a) (2).

The sole issue in the case is whether the amount of $45,000 is deductible as an expense paid or incurred for the conservation and maintenance of property held for the production of income.

Petitioner and his wife had been estranged for more than twenty years prior to their divorce, although they resided in the same house, for the sake of appearance, and, for what they believed to be the best interests of their children. They did not live together, or associate together, as husband and wife.

Petitioner's principal asset was his stock in the United States Register Company. In 1915 he was office manager of the company, and became through successive promotions, auditor and vice-president. In 1915, Mr. A. O. Jones was president of the company, and held that office until his death in 1934. At the time of Mr. Jones' death, petitioner was the owner of 250 shares of stock in the company; and thereafter, because of the friendship and the confidence of the Jones family in his managerial ability, their votes as stockholders, together with his own, insured his election as president of the company in 1935; and he has held that office ever since. Upon the death of Mrs. Jones and her daughter, petitioner acquired, by bequest from them, additional stock, so that in 1949, his total stock holdings amounted to 3,312 shares. After the death of Mrs. Jones in 1948, 17,000 shares of the stock heretofore owned by her were purchased by the company and retired; and such action left the capital structure of the company with 7,760½ shares outstanding. Petitioner was a close friend of Mr. and Mrs. Wayne H. Young, who were the owners of 225 shares of the stock. Petitioner's son owned 357 shares, which he voted in favor of his father. All of these shares, together with those of petitioner, have always, since his first election as president, insured his reelection.

At the time of the death of Mr. Jones in 1934, the stock was not returning dividends. A year afterward, and under the presidency of petitioner, the stock commenced, and continued to pay dividends up to the present time, with the exception of the year 1942. Sales have grown from $540,000 in 1935 to $3,300,000 in 1954. The net worth of the company has increased from $940,000 to more than

---

1. Section 23(a) (2) of the Internal Revenue Code of 1939 provides as follows: "In computing net income there shall be allowed as deductions: (a) Expenses * * * (2) Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

2. Section 24(a) (1) of the Internal Revenue Code of 1939 provides as follows: "(a) General rule. In computing net income no deduction shall in any case be allowed in respect of—(1) Personal, living, or family expenses, except extraordinary medical expenses deductible under Section 23(x);"

$2,000,000. Petitioner's annual salary and bonus have, during these years, been between $42,000 and $53,000; and his annual dividends amounted, in 1948, to $44,000; in 1949, to $50,000; and in 1950 to $66,000.

When petitioner's wife instituted divorce proceedings in May, 1949 in the Circuit Court for Calhoun County, in the State of Michigan, suit was begun by the filing of a bill of complaint, and the issuance by the court of an injunction, generally prohibiting the alienating, encumbering, or secreting of any of petitioner's real or personal property. The bill of complaint contained a prayer for the equitable division of the property of the parties.

At the behest of his attorneys, petitioner did not file a cross-bill, because he was advised that in the event such a pleading were filed, the Circuit Court might proceed to a hearing and issue a divorce, either to petitioner or his wife. While petitioner himself desired a divorce, his attorneys counseled him, and he agreed, that he could not afford to take any chances upon a disposition of his stock in the Register Company by a divorce decree, and that, in order to protect his income-producing property, it would be necessary to proceed to negotiations, looking toward a property settlement with his wife. Such negotiations were accordingly undertaken by his legal counsel, and continued until the day of final hearing, when an agreement was finally effectuated, preserving to petitioner his rights to the stock.

During the proceedings, counsel for petitioner's wife filed an amended complaint asking for a division of his assets; and they wrote petitioner's counsel with regard to a property settlement, in which letter they sought "a division of the stock itself." Moreover, the attorney for petitioner's wife had made the statement that petitioner was not fit to manage the Register Company, and that a change should be made; and this information alarmed petitioner by the fear that he might be deprived of his stock and the management of the corporation.

However, as stated, an agreement was finally reached, in which petitioner transferred to his wife their residence and all of its furnishings. In addition, petitioner undertook the payment to his wife of $50,000 in cash, payable $20,000 on the date of entry of the decree, $20,000 within ninety days thereafter, and $10,000 within six months following entry of the decree. He also assumed payment of bills in a total amount not to exceed $350.00. Moreover, he agreed to the payment of an additional $158,340.00 as permanent alimony, payable $1,015.00 per month for a period of thirteen years, and also agreed to pay his wife's attorneys the sum of $10,000 as an attorney fee. This agreement was secured by a transfer in escrow by petitioner of shares of his Register stock, bank stock, and other securities. It was agreed that as long as there was no default in the payments above mentioned, petitioner would be entitled to vote the stock in escrow and receive dividends thereon. The total value of property thus transferred by petitioner to his wife, exclusive of the value of their residence and its furnishings, was in excess of $218,000.

The Tax Court in its finding of fact and opinion stated:

"Petitioner did not object to be divorced from his wife, but wanted no property settlement or alimony agreement to jeopardize his controlling stock interest. * * * He employed counsel to represent him in the divorce proceeding and a property settlement and alimony agreement were made by the parties, calling for the payment of certain sums of money secured by a transfer in escrow of certain securities, including stock (in the Register Company). Thereupon a divorce was granted to the wife without contest. Petitioner paid attorney's fees to his counsel, part of which was allocated to 'property settlement.'"

The Tax Court further found as follows:

"When petitioner's counsel had been retained, negotiations looking toward a property settlement were begun and continued until the day of the final hearing when agreement was finally effectuated. Petitioner's position with respect to the divorce action remained constant from the institution of the action until the entry of the decree. He was willing for his wife to obtain a divorce, but opposed any property settlement which involved a permanent transfer from his hands of any Register stock. He was alarmed by being informed that the attorney for his wife had made the statement that he was not fit to manage Register and that a change should be made."

On the hearing before the Tax Court, petitioner testified that the amount of his attorney's bill covering services rendered for the protection and retention of his property, amounted to $45,000; that in making a payment of $20,000 on the total fee in 1950, he gave instructions to his attorneys that such sum was to be applied to that portion of the bill covering their services for the protection of his property.

In Baer v. Commissioner of Internal Revenue, 8 Cir., 196 F.2d 646, it was held that where there was little occasion for the services of a taxpayer's lawyers, in divorce proceedings proper, and such services were largely devoted to adjusting the taxpayer's liability to his wife, so as to prevent the breakup of his stock holdings and thereby reducing his income by depriving him of control of the corporation, the attorneys' fees for services rendered to conserve the income-producing property did not constitute personal expenses, but rather expenses incurred for the conservation of the property held for production of income. It was, therefore, determined that the taxpayer was entitled to deduct from his gross income, the sum thus paid to his attorneys, notwithstanding the fact that the same attorneys also acted for him in connection with his domestic controversy.

To the same effect see McMurtry v. United States, 132 F.Supp. 114, 132 Ct. Cl. 418. See also Smith's Estate v. Commissioner of Internal Revenue, 3 Cir., 208 F.2d 349; Tressler v. Commissioner, 9 Cir., 228 F.2d 356.

In view of the findings of fact of the Tax Court and the undisputed testimony of petitioner, we are of the view that the fee of $45,000, which was paid to petitioner's attorneys for the protection and conservation of his income-producing property, was properly deductible as claimed. The decision of the Tax Court is accordingly reversed, and the case remanded for further proceedings not inconsistent with this opinion.