**M. L. McMAKIN, Plaintiff,**

v.

**Gilbert C. HOOKS, District Director of Internal Revenue, Defendant.**

**Civ. A. No. 4038.**

United States District Court
W. D. Kentucky,
at Louisville.
Dec. 14, 1961.

---

Joe A. Wallace, Louisville, Ky., for plaintiff.

William E. Scent, U. S. Atty., Louisville, Ky., for defendant.

BROOKS, Chief Judge.

By this action the taxpayer seeks a refund of income taxes and interest paid as a result of a deficiency assessment based upon the Commissioner's determination that no portion of an attorney fee paid by the taxpayer in 1957 in connection with a divorce action and property settlement was deductible in his income tax return for that year as an ordinary and necessary expense "for the management, conservation, or maintenance of property held for the production of income" within the meaning of Section 212 (2) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 212(2). The case was submitted on stipulation and the depositions of the taxpayer and the attorney for his former wife.

In 1957 the taxpayer, two of his uncles, and a cousin owned and operated a real estate development business which was carried on through four family-owned corporations known as Wakefield-Mc-Makin Realty Company (the parent corporation), Springfield, Inc., Pineland, Inc., and Homes & Subdivision, Inc., and through two partnerships known as Fairmeade Stores and Wakefield Realty. Taxpayer owned a 30 per cent interest in the partnerships and 30 per cent of the stock of each of the corporations. In 1957 he received a salary of $22,000 as vice-president of Wakefield-McMakin Realty Company and salaries of $2,800 from both Springfield, Inc. and Pineland, Inc. Taxpayer had no other businesses and no other sources of income of any significance except from transactions in investment securities.

On January 16, 1957 taxpayer's wife instituted an action for limited divorce, which, under Kentucky law, entitles the wife to an alimony award, but only out of property thereafter acquired by the husband and not out of property previously acquired by him. Formal negotiations for alimony or a property settlement were begun, and various demands were made on the taxpayer, including a proposal that he convey to his wife all of his stock in the four corporations through which he made his living as a real estate developer. Another proposal called for the payment of a lump-sum cash settlement of $250,000.00.

On January 31, 1957 taxpayer filed an answer and counterclaim seeking an absolute divorce and custody of his minor child. Thereafter, under the terms of a property settlement agreement entered into on April 4, 1957 taxpayer undertook to pay his wife $205,000, payable $90,000 in cash and $5,000 semi-annually until paid in full. The taxpayer then withdrew his counterclaim, and his wife amended the prayer of her complaint to ask for an absolute divorce, which was granted on April 5, 1957.

The record discloses that throughout the entire time the divorce action was pending, taxpayer's wife was agreeable to a divorce, as was the taxpayer, but believing that taxpayer preferred an abso-

lute divorce to a limited one, the wife commenced an action for a limited divorce as a stratagem calculated to place her in a position to demand a more favorable property settlement.

The record also shows that taxpayer reasonably believed his salaried position as an officer of the corporations, and consequently his livelihood, would be lost or placed in jeopardy if he were forced to convey his stock in the corporations to his wife. He testified that his connection with his employer companies would have been discontinued if he had been required to surrender his stock holdings in them.

Taxpayer did not contest his wife's divorce action, and both parties agreed to joint custody of their minor child. No court proceedings were had with respect to alimony pendente lite or to a property settlement. Taxpayer's primary concern was to obtain a property · settlement whereby he could retain the stock in the family corporations, one which would not involve an immediate cash outlay of such an amount as to impair the financial picture of the corporations, upon whose notes in large amounts he was a co-signer, and one which would afford him the most favorable tax treatment. Most of his attorney's efforts were devoted to these ends.

Of an attorney fee of $6,500 paid by taxpayer, he and the attorney allocated $1,000 for the attorney's services in connection with the divorce and $5,500 for the services in connection with the property settlement.

Taxpayer deducted $5,500 in his 1957 income tax return as an ordinary and necessary expense for the preservation and conservation of income producing properties; the Commissioner disallowed the deduction on the ground that it was a personal or family expenditure, and taxpayer paid the resulting deficiency assessment and filed a timely claim for refund.

■ While there is a divergence of views among the authorities, the Sixth Circuit has ruled that attorney fees, though occasioned by and incident to a divorce proceeding, may be deducted as a non-business expense if in fact they were paid for the preservation and conservation of income producing properties, Bowers v. Commissioner, 243 F.2d 904 (C.A.6), and this case is governed by that decision.

■ Defendant seeks to distinguish this case from Bowers on the ground that here the taxpayer filed the first pleading which asked for an absolute divorce and that his desire for a divorce, and nothing else, necessitated the property settlement and caused his livelihood to be placed in jeopardy. There is considerable doubt as to the soundness of the contention that no legal fees could be deductible if incurred in connection with the taxpayer's own action for divorce, but this is not such a case. In other words, the form and sequence of pleadings do not necessarily reflect the true motives of the parties, and the record in this case discloses that it was not merely the taxpayer's desire for a divorce which necessitated the property settlement inasmuch as his wife, who commenced the action, wanted and was granted a divorce, presumably upon adequate grounds.

Defendant also argues that the taxpayer's case fails for the reason that he did not demonstrate complete neutrality with respect to the divorce proceeding. It is unlikely that an indifferent state of mind can exist in such matters, but a better answer is that the taxpayer's desire for a divorce, expressly found to exist, did not defeat his claim in Bowers, supra. The important thing is that the plaintiff was able to show that the divorce was uncontested and, thus, that the fees were paid to his attorney primarily for the latter's services in preserving specific income producing properties.

The probability of taxpayer's losing his position is certainly better known to him than to the Government, and, under the circumstances, he has established that his fears were reasonably entertained.

It is concluded that the taxpayer is entitled to the refund sought. Counsel for plaintiff will tender judgment on notice.