The Hygienic Products Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 86726.   Promulgated January 26, 1938.

*Meyer A. Cook, Esq., Fred Warak, Esq.,* and *John E. O. Feller, C. P. A.,* for the petitioner.

*T. M. Mather, Esq.,* for the respondent.

### OPINION.

Mellott: The Commissioner made several adjustments to the net income shown by the return of the petitioner for the year 1934 and determined a deficiency in its income tax for said year in the amount of $12,645.83. Petitioner concedes that all of the adjustments were properly made with the sole exception of the disallowance by the Commissioner of a credit against the tax in the amount of $10,848.30 representing income taxes paid by the petitioner in 1934, to the Dominion of Canada for the years 1930 to 1933, inclusive, and which it contends should have been allowed under section 131 of the Revenue Act of 1934. The Commissioner did, however, allow a credit

---

[7] *Helvering* v. *San Joaquin Fruit & Investment Co.,* 297 U. S. 496.

in the amount of $550.59 for taxes accrued during the year 1934 for income taxes due the Dominion of Canada and petitioner does not contend that such credit was improper.

The sole issue is whether or not the Commissioner erred in disallowing $10,848.30. Most of the facts were stipulated. The stipulation, exclusive of signatures and purely formal parts, is as follows:

1. The petitioner, an Ohio corporation, filed its income tax return for the taxable year 1934 with the Collector of Internal Revenue, 18th Collection District, Cleveland, Ohio.

2. The petitioner has been engaged in business in the Dominion of Canada for a period of more than fifteen years, being represented by Harold F. Ritchie and Company, Ltd., manufacturers representatives. The manner of doing business of the petitioner and its representative in Canada has been the same during the entire period.

3. The Dominion of Canada in the year 1924 enacted an income tax law. The petitioner's representative in Canada advised the petitioner that it was not amenable to the income tax law of the Dominion of Canada and, accordingly, no returns for Canadian income tax were filed by the petitioner.

4. The Dominion of Canada on August 22, 1933, requested the petitioner to file income tax returns for the years 1930, 1931, 1932 and 1933. Thereafter Dominion of Canada income tax returns were filed by the petitioner for the years 1930, 1931, 1932 and 1933 under respective dates of November 14, 1933, November 14, 1933, September 19, 1933 and June 19, 1934.

5. Petitioner contested the imposition of any income tax by the Dominion of Canada on the theory that it was not doing business in the Dominion of Canada within the purview of the income tax law of the Dominion of Canada and it was not definitely determined to the satisfaction of the petitioner that it was amenable to the income tax law of the Dominion of Canada until July 25, 1934, at which time payment was made to the Dominion of Canada in the sum of $9,722.33, representing taxes, penalties and interest for income taxes due the Dominion of Canada for the years 1930, 1931 and 1932. On November 26, 1934 payment was made to the Dominion of Canada in the sum of $1,125.97, representing taxes, penalty and interest due the Dominion of Canada for the year 1933.

6. The income tax returns of the petitioner filed with the Collector of Internal Revenue at Cleveland, Ohio, have contained the following information:

*"Basis of Return*

6. Is this return made on the basis of cash receipts and disbursements? No.
   If not, describe fully what other basis or method was used in computing net income. Accrual."

The petitioner has consistently throughout its corporate existence treated the sales of its product and other property as income when such sales were made whether or not the cash was collected at the time of making the sale. Inventories of goods on hand are used at the beginning and end of each year in determining the cost of goods sold, even though in the cost of goods sold there are or may be items of inventory that are not paid for nor charged to "Purchases" in the year in which the inventory is effective. The expenses

of the petitioner have consistently been recorded only as the cash was disbursed, even though there appears at times an item on the balance sheet called "Accounts Payable," which is in each instance a customer's credit balance and not unpaid purchases or expenses. The petitioner has never accrued on its books or its returns any Federal, State, County, Municipal or other taxes owing at the end of the taxable year. The Commissioner in adjusting the petitioner's returns has accrued these taxes.

We find the facts to be as stipulated and in addition make some observations with reference to the testimony of the only witness called—a certified public accountant employed by the petitioner. We decline to make the findings of fact suggested by petitioner upon brief, based upon the testimony of such witness; for we can not find, as a fact, that the system of bookkeeping employed by the petitioner clearly reflected its income, though the witness stated that it did. In this connection it may be pointed out that the witness testified that representatives of the Department had consistently taken the position that such system did not clearly reflect petitioner's income and year after year had adjusted it by the addition or elimination of several hundred dollars in connection with its bookkeeping methods showing the payment or accrual of taxes. Nor should it be found as a fact that "the Commissioner at no time for fourteen years requested that petitioner change its system of making the return," even though the witness categorically so testified; for the statute, section 41, Revenue Act of 1934,[1] provides that "if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * * " The facts pointed out above indicate that the Commissioner had applied the quoted language year after year and it was unnecessary for him to make any formal request of the petitioner to change its system of bookkeeping. We do, however, find as a fact, in addition to the facts stipulated, that petitioner paid its bills currently; that its cash position had consistently been such that it could, and did, pay its bills as soon as they were received and approved for payment; and that the first foreign tax which it ever paid was in June or July of 1934.

[1] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year. (For use of inventories, see section 22 (c).)

The portions of section 131 of the Revenue Act of 1934 deemed pertinent to the issue are shown in the margin.[2]

It has been pointed out above that section 41 of the applicable revenue act authorizes the Commissioner to make a computation in accordance with such method as in his opinion clearly reflects the income of a taxpayer if the method employed by it in keeping its books does not do so. In addition it may be pointed out that section 43 of the same act provides that the deductions and credits allowed under the income tax law "shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the

[2] SEC. 131. TAXES OF FOREIGN COUNTRIES AND POSSESSIONS OF UNITED STATES.

(a) ALLOWANCE OF CREDIT.—If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this title shall be credited with:

(1) CITIZEN AND DOMESTIC CORPORATION.—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; and

\*　　\*　　\*　　\*　　\*　　\*　　\*

(b) LIMIT ON CREDIT.—The amount of the credit taken under this section shall be subject to each of the following limitations:

(1) The amount of the credit in respect of the tax paid or accrued to any country shall not exceed the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources within such country bears to his entire net income for the same taxable year; and

(2) The total amount of the credit shall not exceed the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources without the United States bears to his entire net income for the same taxable year.

(c) ADJUSTMENTS ON PAYMENT OF ACCRUED TAXES.—If accrued taxes when paid differ from the amounts claimed as credits by the taxpayer, or if any tax paid is refunded in whole or in part, the taxpayer shall notify the Commissioner, who shall redetermine the amount of the tax for the year or years affected, and the amount of tax due upon such redetermination, if any, shall be paid by the taxpayer upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 322. In the case of such a tax accrued but not paid, the Commissioner as a condition precedent to the allowance of this credit may require the taxpayer to give a bond with sureties satisfactory to and to be approved by the Commissioner in such sum as the Commissioner may require, conditioned upon the payment by the taxpayer of any amount of tax found due upon any such redetermination; and the bond herein prescribed shall contain such further conditions as the Commissioner may require.

(d) YEAR IN WHICH CREDIT TAKEN.—The credits provided for in this section may, at the option of the taxpayer and irrespective of the method of accounting employed in keeping his books, be taken in the year in which the taxes of the foreign country or the possession of the United States accrued, subject, however, to the conditions prescribed in subsection (c) of this section. If the taxpayer elects to take such credits in the year in which the taxes of the foreign country or the possession of the United States accrued, the credits for all subsequent years shall be taken upon the same basis, and no portion of any such taxes shall be allowed as a deduction in the same or any succeeding year.

(e) PROOF OF CREDITS.—The credits provided in this section shall be allowed only if the taxpayer establishes to the satisfaction of the Commissioner (1) the total amount of income derived from sources without the United States, determined as provided in section 119, (2) the amount of income derived from each country, the tax paid or accrued to which is claimed as a credit under this section, such amount to be determined under rules and regulations prescribed by the Commissioner with the approval of the Secretary, and (3) all other information necessary for the verification and computation of such credits.

method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period." Under these sections and in accordance with law, the Commissioner year after year had adjusted the Federal income tax returns filed by the petitioner by eliminating the deductions which, though proper under the cash receipts and disbursements basis, were improper under the accrual basis or method of keeping its books. Apparently the petitioner has never questioned the Commissioner's right to make such adjustments prior to the taxable year. But is such adjustment proper for the taxable year? Petitioner contends that it is not.

In support of petitioner's contention that the respondent erred in making the adjustments to its income for the taxable year it points out that it had always made its returns under a "hybrid" system, its receipts being on the accrual basis and its expenses being on the cash basis; that the Commissioner had always "accepted such returns" and "it must be presumed that the accounting method employed by the petitioner clearly reflected" its income. The hybrid system of accounting is not proper, *Massachusetts Mutual Life Insurance Co.* v. *United States*, 288 U. S. 269; *Maine Dairy Co.*, 4 B. T. A 375; *Niles Bement Pond Co.* v. *United States*, 67 Ct. Cls. 693; affd., 281 U. S. 357; *John I. Chipley*, 25 B. T. A. 1103; *Coatesville Boiler Works*, 9 B. T. A. 1242; and *Edwards Drilling Co.*, 35 B. T. A. 341, on appeal to 5th C. C. A.; and the system used being predominantly the accrual method, the respondent was clearly justified in setting up petitioner's income on that basis. The return on its face showed that petitioner has chosen to use such basis. It should not complain because the respondent has done so. In so far as the contention that the respondent had accepted "hybrid" returns is concerned, the evidence shows, as pointed out above, that the Commissioner had, in each instance, eliminated the deductions which were not allowable under the accrual method of accounting and added the amounts which were allowable, whether they had actually been paid or not. The contention that any such presumption as that referred to by the petitioner exists is manifestly erroneous. The method of accounting employed by a taxpayer is never conclusive; *Brown* v. *Helvering*, 291 U. S. 193, and the Commissioner is required to make the proper computation. *United States* v. *Anderson*, 269 U. S. 422.

Under the accrual method of accounting, items must be accrued when all events have occurred which show that there is an actual indebtedness *to* or *from* the one keeping his books on such basis. Cf. *H. Liebes & Co.*, 34 B. T. A. 677; affd., 90 Fed. (2d) 932. Taxes stand upon the same footing. *United States* v. *Anderson, supra.* If all the events have occurred "which fix the amount of the tax and

determine the liability of the taxpayer to pay it" it must be accrued. *Aluminum Castings Co.* v. *Routzahn*, 282 U. S. 92; *Elmhirst* v. *Duggan*, 14 Fed. Supp. 782; *Great Northern Railway Co.*, 30 B. T. A. 691; *Continental Baking Corporation*, 30 B. T. A. 354; affd., 77 Fed. (2d) 119; and *Russell-Miller Milling Co.*, 27 B. T. A. 405; affd., 69 Fed. (2d) 392.

*Russell-Miller Milling Co.*, *supra*, involved the allowance of a credit under the Revenue Act of 1928 for the fiscal year ended August 31, 1929, for British income taxes of prior years. The essential facts were somewhat analogous to the facts in the instant proceeding and the section of the revenue act applicable, i. e., 131 (d) of the Revenue Act of 1928, was substantially identical with 131 (d) of the act applicable here. Therein the Board said:

\* \* \* The exception mentioned in section 131 (d) permits a taxpayer at his option to accrue the credit prior to the year of actual payment, even if reporting on a cash basis, but does not authorize a taxpayer reporting on the accrual basis, as was the petitioner, to postpone taking the credit until the foreign taxes are actually paid in a subsequent year. We can not extend the scope of the statute by implication.

But, says petitioner, in view of the fact that it "consistently and steadfastly maintained until July, 1934, that it was not amenable to the Canadian income tax law" there "was, at best, a contingent liability." Petitioner therefore cites and relies upon the line of cases which hold that in tort cases or in contested actions for the breach of a contract the liability to respond in damages, ultimately fixed by the judgment of a court, is not to be accrued in the year the breach occurred but in the year that such liability becomes fixed. *Bunp Confectionery Co.*, 4 B. T. A. 50. Cf. *H. Liebes & Co.*, *supra*. The cited rule, though sound and to be applied in similar cases, is not applicable here. The fact that petitioner denied that it owed the Canadian Government any tax does not make its liability contingent. Cf. *Brooklyn Union Gas Co.*, 22 B. T. A. 507; *Russell-Miller Milling Co.*, *supra;* and *Hecla Mining Co.*, 35 B. T. A. 454. The amount of the tax and petitioner's liability for the payment thereof were fixed by the laws of the Dominion of Canada. The amounts could have been ascertained by petitioner and accrued upon its books at the end of each of the years. If proper accrual had been made the amount would have been deductible, at petitioner's election, under section 23 of the revenue act or a credit against its taxes due to the Federal Government could have been claimed in its returns of income under section 131. But the fact that no deduction was taken and no credit was claimed does not authorize the deduction in the taxable year.

The deficiency determined by the respondent is approved.

*Judgment will be entered for the respondent.*