Alta Cooperative Elevator, a Corporation v. Commissioner.
Alta Coop. Elevator v. Commissioner
Docket No. 65043.
United States Tax Court
T.C. Memo 1959-33; 1959 Tax Ct. Memo LEXIS 213; 18 T.C.M. (CCH) 160; T.C.M. (RIA) 59033; February 25, 1959
*213 1. Determination made as to the right of petitioner, a non-tax-exempt farmers' cooperative association, to exclude from its gross income as part of its patronage dividends, certain amounts allocated for the benefit of its members only, out of compensation received from the Commodity Credit Corporation (a government agency which was not a member of the petitioner cooperative) for handling and storing grain owned by such agency. Pomeroy Cooperative Grain Co., 31 T.C. - (Dec. 31, 1958), followed. 2. Held, that where petitioner kept its books and filed its Federal income tax returns on a calendar year basis and principally in accordance with an accrual method of accounting, it was entitled to deduct for the years 1953 and 1954, only those liabilities for state income taxes and county property taxes which had accrued in these years, notwithstanding that it had for many years followed a practice of deducting such items in the years of payment, rather than in the years when such liabilities accrued. James M. Stewart, Esq., Central National Building, Des Moines, Ia., and Rolland E. Grefe, Esq., for the petitioner. Ivan L. Onnen, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent determined deficiencies in petitioner's income taxes as follows: Year
Deficiency
1953
$1,615.89
1954
4,894.10
1955
2,410.25
The issues for decision are: (1) Whether the petitioner, a non-taxexempt farmers' cooperative association, is entitled to exclude from its gross income, as part of its patronage dividends (designated on its returns as "Patronage Refunds"), amounts allocated for credit and subsequent distribution to its members only, out of compensation received by petitioner from the Commodity Credit Corporation (a government agency which was not a member of the cooperative), for handling and storing grain which producers of such grain (including both members and nonmembers of the cooperative) had surrendered *216 to such government agency at petitioner's elevator, in satisfaction of government crop loans. (2) Whether the petitioner, which kept its books and filed its Federal income tax returns on a calendar year basis and principally in accordance with an accrual method of accounting, is entitled to deduct for the years 1953 and 1954, its liabilities for state income taxes and county property taxes that had accrued in the preceding years but had been paid in 1953 and 1954, respectively, where petitioner's deduction of these two liabilities in their years of payment conformed with its treatment of said items for many prior years. All other issues raised in the pleadings were abandoned by petitioner at the trial. Findings of Fact Some of the facts were stipulated; and it was stipulated also that certain exhibits and all oral testimony relating thereto, previously received in evidence in the case of Pomeroy Cooperative Grain Co., 31 T.C. - (Dec. 31, 1958), are incorporated herein and may be considered by this Court in making the findings of fact and rendering its opinion on the first issue in the instant case. The stipulation, together with all exhibits identified therein, is incorporated *217 herein by reference. The petitioner, Alta Cooperative Elevator, is an Iowa corporation which has its principal place of business at Alta, Iowa. During all the taxable years, it qualified and was operated as a farmers' "cooperative association" under Chapter 499 of the Codes of Iowa, 1950 and 1954. It did not qualify (which it has conceded) as a taxexempt cooperative, under section 101(12) of the Internal Revenue Code of 1939 or under section 521 of the Internal Revenue Code of 1954. Its returns for all the taxable years were filed with the district director of internal revenue for the district of Iowa. Facts re Patronage Dividends Allocated out of Government Grain Income Petitioner is a purchasing and marketing cooperative, dealing in grain and farm supplies. These business activities were carried on through two departments, known respectively as the Grain and Merchandise Departments. Its activities in connection with the marketing of grain purchased from its patrons, and also those in connection with the handling and storing of grain for the Commodity Credit Corporation (here directly involved), were carried on through its Grain Department. Each of said *218 departments transacted business with nonmembers, as well as with members, of the petitioner cooperative. During each of the years involved, petitioner purchased grain at its elevator from the producers thereof (including both members and nonmembers of the cooperative). If the seller was a member of the cooperative, he was given credit on petitioner's patronage ledger for the number of bushels which he sold. Title to all grain so purchased, passed to petitioner at the time of its delivery at petitioner's elevator; and such grain was then included by petitioner in its inventory. The seller was paid the current market price for the grain. Thereafter, petitioner sold such grain either on the terminal markets or elsewhere, in such manner as it believed would yield it the greatest profit. The amounts of the grain so purchased by petitioner from producers during the taxable years were as follows: Bushels
Bushels
purchased
purchased
Total
from
from
bushels
Year
members
nonmembers
purchased
1953
233,872
52,438
287,310
1954
181,775
119,121
300,896
1955
199,265
141,674
340,939
The gross profits realized by petitioner from the sale of grain *219 so purchased were included by petitioner in the so-called "gross savings and income" (representing, in substance, gross profits per books) of its Grain Department, for the purpose of computing patronage dividends. During each of the taxable years, petitioner also received at its elevator, certain other grain which producers thereof voluntarily surrendered to the Commodity Credit Corporation (a government agency, hereinafter called the "C.C.C."), in satisfaction of government crop loans made to such producers by said agency. Grain so surrendered is hereinafter called "Government grain." The deliveries of such grain at the elevator were made pursuant to written instructions issued to the producers by the county committee which, acting as local representative of the C.C.C., had approved the loans on behalf of said agency. If the delivering producer was a member of the cooperative, he was given credit on petitioner's patronage ledger for the number of bushels delivered. Thereafter, in accordance with written instructions issued by the county committee, petitioner either shipped out the grain at once to a point designated by the committee, or stored it in its elevator, or placed it in *220 government-owned storage bins situated in the locality. If the grain was stored in petitioner's elevator, the handling and storing were done pursuant to a Uniform Grain Storage Agreement between petitioner (as a warehouseman) and the C.C.C., which fixed the amounts of the compensation to be paid to petitioner by the C.C.C. for such services; and a warehouse receipt for the grain was issued by petitioner for the C.C.C. If, on the other hand, the grain was stored by petitioner in government-owned bins, this was done in accordance with a contract between petitioner and the particular county committee, which fixed the amount of the compensation to be paid to petitioner for its services in loading and unloading the grain into and out of such bins. Title to all Government grain delivered to petitioner by producers in satisfaction of government crop loans, passed to the C.C.C. at the time of its delivery at petitioner's elevator. Petitioner at no time owned any of this Government grain; it at no time included any of the same in its inventory; and it did not market any of such grain on behalf of anyone. The number of bushels of Government grain delivered to petitioner in each of the taxable *221 years 1954 and 1955 [1] was: Bushels
Bushels
delivered
delivered
Total
by
by
bushels
Year
members
nonmembers
delivered
1954
132,990
40,537
173,527
1955
79,524
57,219
136,743
The amounts of compensation received by petitioner from the C.C.C. during the taxable years, for handling and storing Government grain were: $37,916.31 for the taxable year 1953; $26,538.07 for the taxable year 1954; and $30,177.56 for the taxable year 1955. All the above amounts of compensation received for handling and storing Government grain were included by petitioner in the "gross savings and income" of its Grain Department, for the purpose of computing patronage dividends. During the taxable years, petitioner allocated portions of these amounts as patronage dividends, for the benefit of its members only; and it excluded the amounts so allocated from gross income on its Federal income tax returns, by adding the same to its cost of goods purchased. Neither the C.C.C. nor any county committee acting on behalf of such agency was a member *222 of the petitioner cooperative association. The respondent, in his notice of deficiency, determined that petitioner was not entitled to exclude from its gross income, as part of its patronage dividends, any of the amounts allocated for the benefit of its members only, out of compensation received from the C.C.C. for handling and storing grain owned by such agency. Facts re Deductibility of Local Taxes The petitioner, at all times material, kept its books of account and filed its Federal income tax returns on a calendar year basis and in accordance with an accrual method of accounting; except that for the year 1953 and also for many prior years, it had followed the practice of entering on its books and deducting on its Federal income tax returns, its liabilities for Iowa State income taxes and county property taxes in the years when these taxes were paid, rather than in the preceding years when the liabilities therefor accrued. It at all times maintained inventories, accrued all of its income and accounts receivable, and accrued also all of its liabilities, except those for the two local taxes above mentioned. Its Federal income tax return for each of the years 1953 and 1954 stated *223 that it was prepared on an accrual basis; and neither of these returns disclosed on its face that the amounts of the local taxes deducted therein were those which had accrued in the preceding year. No audit of petitioner's accounts was made by respondent, prior to that for the years here involved; and, except for the present taxable years, no challenge was made by respondent to the above-mentioned manner in which petitioner had been treating its liabilities for said local taxes. Petitioner, in its Federal income tax return for the year 1953, deducted in accordance with its above-mentioned practice, its 1952 Iowa income tax in the amount of $165.42, which had accrued (as petitioner apparently concedes) in the year 1952, but which had not been paid until March 12, 1953. Likewise, in said 1953 return and in accordance with said practice, petitioner deducted its 1952 county property tax in the amount of $3,579.36, which had accrued (as it also apparently concedes) in 1952, but which had not been paid until 1953. During the year 1954, petitioner discontinued the services of the accountant who had theretofore audited its books and prepared its income tax returns; and it then made arrangements *224 with the Farmers Grain Dealers Association of Iowa to perform such services. The accountant for this Association, in his audit of petitioner's books for the year 1954, recommended and caused certain adjusting entries to be made on petitioner's journal as of December 31, 1954, which were then posted to the general ledger, whereby petitioner's liabilities for both its 1954 Iowa income tax and its 1954 county property tax were accrued as liabilities of that year. Thereafter, in petitioner's Federal income tax return for the year 1954, both of said 1954 local taxes were deducted as accrued liabilities of said year. However, there also were deducted in said 1954 return in accordance with petitioner's prior practice, the amounts of both of these same two local taxes for the preceding year 1953 - so that these taxes for two years were deducted on the same 1954 return. Respondent, in his notice of deficiency, determined that petitioner was entitled to deduct for the taxable years 1953 and 1954, respectively, and he allowed as deductions for such years, only those liabilities for Iowa State income tax and county property tax which had accrued in these particular years; and he disallowed *225 as deductions for each of said years, the amounts of such local taxes which had accrued in the preceding year. Opinion I. The first issue in this case is identical with the first issue presented in the case of Pomeroy Cooperative Grain Co., 31 T.C. - (Dec. 31, 1958). Both cases were tried on the same trial calendar; and the facts of each, relative to the common issue, are substantially the same. At the trial herein, counsel for the petitioner and the respondent agreed that the holding made by this Court on the first issue in the Pomeroy case, should control the decision of the first issue in the instant case. Accordingly we here hold, consistent with the holding heretofore made by us in the Pomeroy case, that amounts allocated by petitioner as patronage dividends for the benefit of its members only, out of compensation received from the C.C.C. for handling and storing Government grain, do not qualify as true patronage dividends; and that the same are not excludible from petitioner's gross income. II. The second issue for decision is, whether the respondent erred in determining that, for Federal income tax purposes, petitioner's Iowa income taxes and county property taxes are *226 deductible only for the respective taxable years in which the liabilities for such taxes accrued, and not for the following years when such taxes were paid. It is our opinion that such determination of the respondent must be sustained. In the first place, there is no question that petitioner did at all times material, except for its special treatment of said two local taxes, keep its books of account and file its Federal income tax returns in accordance with an accrual method of accounting; and that, except for said two local taxes, it entered in said books and reported on said returns, all of its income and all of its other deductible expenses on such accrual basis. And in the second place, it is well settled that petitioner's liability for each of these two local taxes accrued in the particular years for which the same were levied and assessed, since all of the events which determined the amounts of such liabilities occurred in those years. United States v. Anderson, 269 U.S. 422. This appears to have been conceded by petitioner on brief; and it also was recognized by petitioner in the preparation of its 1954 Federal income tax return. Also, it has been judicially *227 determined that the liability for Iowa property taxes attaches and accrues in the year for which they are levied. Lowell H. Chamberlain, 43 B.T.A. 259; and Helvering v. Johnson County Realty Co., 128 Fed. (2d) 716 (C.A. 8). In such circumstances, the conclusion is in our opinion inescapable that, in order for petitioner's taxable income for the years 1953 and 1954 to be clearly and correctly reflected, it was necessary for petitioner to treat its liabilities for said two local taxes in a manner consistent with its treatment of all its income and all its other liabilities for said years, which was on the accrual basis. To the extent that it did not so treat them, the respondent was fully warranted, under the authority given to him by section 41 of the 1939 Code and by section 446(b) of the 1954 Code, to compute the taxable income for said years by consistent application of such accrual method, so that the income would be clearly and accurately reflected. The fact that respondent did not make similar adjustments for preceding years (even if it be assumed that respondent's agents were aware of the manner in which said local taxes were then being treated by petitioner) *228 did not estop respondent from making a determination of the correct net incomes for the particular years here involved. Reynard Corporation, 30 B.T.A. 451, 454; Booth Newspapers, Inc., 17 T.C. 294, 297. Petitioner contends, however, that the system of accounting which it had employed for many years in treating these two local taxes as deductible in the years of payment rather than in the years of their accrual, while it at the same time treated all its income and all its other liabilities on an accrual basis, was "hybrid"; that when in the year 1954, its new accountant caused all its income and expenses (including the local taxes) to be accounted for and returned on an accrual basis, this effected a "change in method of accounting" within the meaning of section 481 of the 1954 Code; and that, under this latter section as originally enacted, the respondent was prevented from making any adjustment with respect to its accounts for pre-1954 Code years, and thus that it was entitled to a double deduction for these taxes in the year 1954. Such contention is without merit. First, as was pointed out by the Supreme Court in the case of United States v. Anderson, supra, *229 the purpose of the Federal statutes in authorizing use of an accrual method of accounting was, "to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period; and indeed, to require the tax return to be made on that basis, if the taxpayer failed or was unable to make the return on a strict receipts and disbursements basis." In said Anderson case, the Supreme Court held that the "true income" of the taxpayer there involved, "could not have been determined without deducting from its gross income for the year the total cost and expenses attributable to the production of that income during the year." Furthermore, in Security Flour Mills Co. v. Commissioner, 321 U.S. 281, the Supreme Court definitely disapproved of "a divided and inconsistent method of accounting not properly to be denominated either a cash or an accrual system." And in Hygienic Products Co. v. Commissioner, 111 Fed. (2d) 330, affirming 37 B.T.A. 202, the Court of Appeals *230 for the Sixth Circuit said at page 331: "Petitioner characterizes its system of accounting as 'hybrid.' No such system, however, is recognized by the Act [Revenue Act of 1934, of which section 41 is identical with section 41 of the 1939 Code]; unless the system conforms to one method, it does not reflect income in accordance with the Act, and the Commissoner is empowered to make such corrections as are necessary to make the return accurately reflect income. * * *" To the same effect see Booth Newspapers, Inc., supra. We recognize that the Internal Revenue Service, in its administration of the requirements of the 1939 Code in a practical manner, has in special circumstances and especially where these accord with trade practices in operating particular trades and businesses, allowed some latitude in the application of both the cash and the accrual methods of accounting, where this has not defeated a clear and accurate reflection of the income. And we recognize also that Congress, by section 446(c) of the 1954 Code, has now permitted for the first time, certain combinations of the cash, accrual and other methods of accounting, under Treasury Regulations relating *231 to said section which contain examples of various situations where such combinations are permissible. But these facts in no way limit or affect the primary requirement of the Codes that, under whatever method of accounting may be employed, the income must be clearly and accurately reflected; nor do they in any manner limit the power of the Commissioner, where as in the instant case the income was not accurately reflected (because certain of the liabilities which had accrued and were applicable to the operations of one year had been deferred and deducted from the gross income of the following year), to make such corrections as are necessary to clearly and accurately reflect the income. Finally, as regards section 481 of the 1954 Code upon which petitioner relies, we regard this section to be inapplicable to the facts of the instant case. The "changes in method of accounting" therein dealt with are obviously intended to be changes from one method of accounting which clearly reflects the taxpayer's income, to another method of accounting which also clearly reflects the income; but which, due "solely" to the transition from one method of accounting to the other, may produce duplications *232 or omissions of certain items. In the instant case however, there was no "change in method of accounting" within the meaning of said section; for, neither the corrective journal entries for the year 1954 which were made by petitioner's new accountant, nor the corrective adjustments for both of the years 1953 and 1954 which were made by the respondent in his notice of deficiency, effected any change in the accrual method of accounting which petitioner used for computing and reporting its income, both prior to and subsequent to such adjustments. Rather, these corrective adjustments operated only to give proper application to such accrual method, so as to clearly and accurately reflect petitioner's incomes of both years for which such adjustments were made. Moreover, the retroactive amendment made to said section 481 by section 29(a) of the Technical Changes Act of 1958 (P.L. 85-866, 72 Stat. 1606, 1626) has removed any doubt that, even where an actual "change in method of accounting" has been initiated voluntarily by a taxpayer, the Commissioner is empowered to make such adjustments to the taxpayer's returns for previous years as are necessary to clearly and accurately reflect the *233 incomes of such years. We decide this second issue in favor of the respondent. Decision will be entered under Rule 50. Footnotes
1. The record herein does not disclose the number of bushels of grain delivered to petitioner in the taxable year 1953.↩