The O Liquidating Corporation v. Commissioner.
O Liquidating Corp. v. Commissioner
Docket No. 69767.
United States Tax Court
T.C. Memo 1960-29; 1960 Tax Ct. Memo LEXIS 260; 19 T.C.M. (CCH) 154; T.C.M. (RIA) 60029; February 25, 1960
*260 Petitioner kept its books and reported its income under an overall accrual method of accounting. Petitioner paid the premiums on certain group insurance policies which it maintained for the benefit of employees. Petitioner also received a dividend on these policies which was paid to it in the year following the year in which premiums were paid. In the years from 1941 and prior to 1953, petitioner accrued the dividends as of the end of the year in which premiums were paid although the dividend was not received by it until the subsequent year, and the difference between the premiums paid and the accrued dividends was claimed and allowed as a deduction in the year in which the premiums were paid. The respondent acquiesced in this method of treating the dividends. In 1953, petitioner accrued no dividends. The dividends actually received in 1953 were accrued as of the end of 1952, and the dividends actually received in 1954 were accounted for in 1954. Respondent determined that the dividend received in 1954 should be accounted for in 1953. Held: 1. Under the circumstances, the dividends received in 1954 were not properly accruable in 1953; 2. The failure of petitioner to accrue the *261 dividends in 1953 did not constitute a change in accounting method but was a correct adherence to its regular method of accounting; 3. By the same reasoning, the dividends actually received in 1953 but accrued in 1952 must be accounted for in 1953. John S. Chapman, Esq., 74 Trinity Place, New York, N. Y., for the petitioner. W. B. Riley, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: The respondent has determined a deficiency in income and excess profits tax of petitioner for the year 1953 in the amount of $78,851.43. The issues presented are: (1) whether, under the accrual method of accounting, dividends on group insurance policies received by petitioner in 1954 are properly accruable in 1953; (2) whether a failure by petitioner to accrue such dividends *262 in 1953 constitutes a change in accounting methods which must be approved by respondent; and (3) alternatively, if it is not proper to accrue such dividends in 1953, whether dividends actually received by petitioner in 1953 but accrued by it in 1952 are properly allocable to 1953. Findings of Fact The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioner has at all times kept its books and prepared and filed its Federal income and excess profits tax returns upon a calendar year basis. Petitioner's income and excess profits tax return for the calendar year 1953 was timely filed, under extensions of time duly granted, with the district director of internal revenue, Newark, New Jersey, on June 15, 1954. Petitioner has at all times here material maintained its books and prepared and filed its Federal income and excess profits tax returns under an overall accrual method of accounting and has not, insofar as here material, applied for or received the consent of respondent to change the method of accounting employed in computing its income for the purposes of taxation, either with respect to its overall accounting method or with respect *263 to its method of accounting for any specific item. Petitioner in the year 1918 commenced and has since broadened and continuously maintained a group insurance plan under which various types of insurance coverage were made available to its employees under group insurance policies, the premiums of which policies were paid in whole or in part by petitioner. At all times here material, such group insurance policies were obtained from The Equitable Life Assurance Society of the United States, hereinafter referred to as Equitable Life. During 1953, the following policies were in effect: Effective
Deemed Date of
Policy
Date of
First Policy
Number
Type of Group Coverage
Policy
Anniversary
5 289 458
Life Insurance
5/1/41
1/1/42
5 289 458D
Accidental Death and Dismemberment
3/1/42
1/1/43
3039
Accident and Health
1/1/49
1/1/50
3039H
Hospital Expense
1/1/45
1/1/46
3039NJ
(New Jersey Temporary Disability Benefits)
1/1/49
1/1/50
Each of the above policies with the exception of Policy No. 3039NJ [1] contained identical provision for the payment of annual dividends thereon as follows: "The surplus, if any, to be distributed upon this policy *264 as a dividend shall be ascertained and distributed by the Society annually as of each policy anniversary provided this policy shall have been continued in force by the payment of all premiums hereunder to such policy anniversary; otherwise the Society shall not distribute any surplus upon this policy. Any surplus apportioned to this policy in accordance with this provision shall be paid in cash to the Employer, or, upon written notice to the Society by the Employer, may be applied by the Employer to the payment of any premium hereon." Each of the above policies, except Policy No. 3039NJ, was issued to become effective upon the date shown above in replacement of a then existing group policy. Each of the above policies was in force from year to year from its effective date by the payment of premiums due thereon, each continuation having an anniversary date of January 1 of each year. Premiums were paid by petitioner monthly in advance under a selfaccounting procedure by which petitioner computed the amount of premiums due based on the then effective rate per employee and the number *265 of employees covered thereunder. The group insurance policies issued to petitioner by Equitable Life were each annual policies providing insurance coverage for a policy year coterminous with the calendar year, except that when a policy was issued to become effective on a date other than January 1, the initial period of insurance coverage thereunder was for a policy year ending on the following December 31. The anniversary date of each policy is on January 1 next following the day on which the policy year ends. Such anniversary date denotes the day on which the first premium is due for the next policy year which commences on such date, for which new policy year an entirely separate dividend computation is made, and is also the date as of which dividends payable in accordance with the policy provisions are ascertained and distributed. Each policy in force during the year 1953, the treatment of the dividends on which is in issue here, provided insurance coverage for a policy year commencing on January 1, 1953 and ending on December 31, 1953, the policy year of insurance coverage being coterminous with the calendar period used by petitioner in keeping its books and filing its returns. *266 The anniversary date for each such policy was January 1, 1954. The annual premium due on each policy was due and paid in monthly installments in advance, the first monthly installment for the 1953 policy year being due and paid on January 1, 1953 and the last monthly installment being due and paid on December 1, 1953. Petitioner has consistently recorded on its books the amount of the monthly premiums as an expense in an account, hereinafter referred to as insurance expense, in the calendar year in which paid. Before 1953, petitioner consistently recorded, as of the end of the year, an amount representing an accrual of group insurance dividends to be paid by Equitable Life and to be received by petitioner in the subsequent year, which amount was recorded in the insurance expense account as an offset to the gross premiums recorded for such year. The resultant figure was claimed as a deduction by petitioner on its Federal income and excess profits tax returns in the year the premiums were paid. During the years 1941 through 1949, the petitioner accrued, as of the end of the year, the exact amount of dividends that were to be received by it in the subsequent year. In 1950, the petitioner *267 recorded as insurance expense the amount of $167,629.30 and accrued dividends in the amount of $45,000. In 1951, the petitioner received dividends in the amount of $70,004.23. In 1951, the petitioner recorded as insurance expense the amount of $230,799.35 and accrued dividends in the amount of $55,000. Petitioner also entered in the insurance expense account the amount of $25,004.23, representing the amount by which the dividends received in 1951 exceeded the dividends accrued as of the end of 1950. In 1952, the petitioner received dividends in the amount of $50,612.16. In 1952, the petitioner recorded as insurance expense the amount of $250,692.88 and accrued dividends in the amount of $72,531.79. Petitioner also entered in the insurance expense account the amount of $4,387.84, representing the amount by which the dividends accrued as of the end of 1951 exceeded the dividends received in 1952. Petitioner reported the resultant figure in its 1952 Federal income and excess profits tax return. In 1953, the petitioner received dividends in the amount of $72,531.79. These dividends were received on March 27, 1953, after the board of directors of Equitable Life had, on February 19, 1953, adopted *268 the following resolution: "WHEREAS, The officers of the Society have caused a calculation to be made to ascertain the amount of the surplus earned by the Society during the year ended December 31, 1952; and "WHEREAS, By said calculation, based on the financial statement of the Society for the said year, heretofore submitted to and approved by this Board, said surplus earned during the year 1952 (on book value basis) is found to be $110,015,468.60 which added to the total available surplus at December 31, 1951 and diminished by the dividends incurred during 1952, makes a total available surplus at the end of 1952 of $481,391,719.10 (on book value basis). "NOW, THEREFORE, BE IT RESOLVED: "1. That there be set aside the sum of $506.00, being the portion of said total available surplus which should be held for apportionment after 1953 on account of outstanding deferred dividend policies; and "2. That out of said total available surplus there be set aside, as general surplus or contingency reserves, such part thereof as may not be required for the payment of dividends on policies and contracts under this resolution, the amount to be so set aside being, as nearly as may be determined, *269 $394,940,125.10; and "3. That the balance of said total available surplus be apportioned (a) as annual dividends to such policies and contracts not in default as to premium payments, and to such other annuity contracts, as may be entitled to share therein during the year 1953, (b) to such deferred dividend policies as end their accumulation periods during the year 1953 on which premiums shall have been paid in full at the dates of the maturity of their respective periods, and which shall be in force at said dates, as their full share of surplus profits as determined by the Actuaries of the Society, and (c) to policies which are to be granted endowment maturity or surrender dividends during the year 1953; and that the amount apportioned to each such policy or contract referred to in (a), (b) and (c) above and any additional conditions of such apportionment be determined in accordance with the Actuary's Report hereto attached." The Actuary's Report referred to in the above resolution was prepared on or about January 20, 1953. In 1953, the petitioner recorded as insurance expense the amount of $265,327 and accrued no dividends. In its Federal income and excess profits tax return *270 for the year 1953, the petitioner claimed as a deduction the full amount of the group insurance premiums. In 1954, petitioner received dividends totaling $114,117.44. These dividends are arrived at by Equitable Life through the application of a formula applied to a designated portion of its surplus. The formula takes into consideration premiums paid by policyholders, claims of policyholders to be paid after the anniversary date as well as the overall claim experience of the policyholder, expenses of Equitable Life, interest earned on the policyholder's moneys which have been in possession of Equitable Life during the policy period, and contributions deemed necessary by Equitable Life to its contingency reserves. The formula for determining the dividend paid in 1954 was arrived at on or about January 20, 1954, and is referred to by Equitable Life as the Actuary's Report. On February 18, 1954, the board of directors of Equitable Life met and adopted the following resolution: "WHEREAS, The officers of the Society have caused a calculation to be made to ascertain the amount of the surplus earned by the Society during the year ended December 31, 1953; and "WHEREAS, By said calculation, *271 based on the financial statement of the Society for the said year, heretofore submitted to and approved by this Board, said surplus earned during the year 1953 (on admitted value basis) is found to be $142,110,856.14 which added to the total available surplus at December 31, 1952 and diminished by the dividends incurred during 1953, makes a total available surplus at the end of 1953 of $520,737,836.71 (on admitted value basis). "NOW, THEREFORE, BE IT RESOLVED: "1. That there be set aside the sum of $769.00 being the portion of said total available surplus which should be held for apportionment after 1954 on account of outstanding deferred dividend policies; and "2. That out of said total available surplus there be set aside, as general surplus or contingency reserves, such part thereof as may not be required for the payment of dividends on policies and contracts under this resolution, the amount to be so set aside being, as nearly as may be determined, $421,436,864.71; and "3. That the balance of said total available surplus be apportioned as dividends to such policies and contracts as may be entitled to share therein during the year 1954, and that the amount apportioned to *272 each such policy or contract and the conditions of such apportionment be in accordance with the Actuary's Report attached hereto." On March 29, 1954, the amount of the dividend to be paid petitioner in 1954 was determined, and on April 8, 1954, the petitioner actually received the dividend. The entire amount of this dividend was used as an offset in the insurance expense account in petitioner's Federal income tax return for the calendar year 1954. On March 12, 1953, upon examination of petitioner's Federal income and excess profits tax return for the year 1950, the respondent made an adjustment in the amount of $25,000 to increase petitioner's accrual as of the end of 1950 representing dividends to be paid by Equitable Life and to be received by petitioner in the year 1951. The effect of such adjustment was to make an aggregate accrual of such dividends in the amount of $70,000 and allow a net insurance expense deduction in the amount of $97,269.30 ($167,629.30 minus $70,000) for the year 1950. The respondent determined a deficiency against petitioner for the year 1950. On February 16, 1955, upon examination of petitioner's Federal income and excess profits tax return for the *273 year 1951, the respondent made adjustments which increased the insurance expense deduction for such year by the aggregate amount of $29,387.84 ($4,387.84 plus $25,000). Such adjustments comprise the amounts of $4,387.84 ($55,000 minus $50,612.16), to decrease petitioner's accrual as of the end of the year representing dividends to be paid by Equitable Life and to be received by petitioner in the year 1952, and $25,000 ($70,000 minus $45,000) representing the approximate amount by which the dividends received in the year 1951 exceeded the amount accrued therefor on petitioner's books as of the end of the year 1950, which excess petitioner had reflected in its insurance expense account for the year 1951 and for which the respondent had previously made an adjustment for the year 1950. The effect of such adjustments was to allow a net insurance expense deduction in the amount of $180,182.96 ($230,799.35 minus $50,612.16 minus $4.23) for the year 1951. The respondent determined a deficiency against petitioner for such year. On November 6, 1956, upon examination of petitioner's Federal income and excess profits tax return for the year 1952, the respondent made an adjustment decreasing *274 the claimed insurance expense deduction by the amount of $114,117.44, representing an accrual as of the year end for the aggregate amount of insurance dividends paid by Equitable Life and received by petitioner in 1954. The effect of such adjustment, which is the single item in dispute herein, was to allow a net insurance expense deduction in the amount of $151,209.56 ($265,327 minus $114,117.44) for the year 1953. Opinion Three issues are presented for resolution, the first of which is, whether under the accrual method of accounting, dividends on group insurance policies received by petitioner in 1954 are properly accruable in 1953. It is not disputed that for the year 1953, petitioner used an overall accrual method of accounting. The dispute herein stems from the failure of petitioner to accrue insurance dividends received by it in 1954 which respondent maintains were properly allocable to 1953. The rule that under the accrual method of accounting, an item of income or expense accrues for purposes of taxation when all events have occurred necessary to fix the liabilities of the parties *275 involved and to determine the amount thereof is too well established to require citation of authority. It is the right to receive income, not the actual receipt thereof, that determines when it should be accrued and included in gross income. Advertisers Exchange, Inc., 25 T.C. 1086, affd. per curiam 240 F. 2d 958; United States v. Harmon, 205 F. 2d 919. The respondent maintains that all of the events which fixed the right of petitioner to receive a dividend on its mutual insurance policies occurred within the year 1953 and that the amount thereof was determinable as of the year end with a reasonable degree of accuracy. We do not agree. The policies themselves contain no provision which guaranteed to petitioner any dividend. The payment of the premiums during the year 1953 did not alone fix the right of petitioner to a dividend. It seems obvious that the right of petitioner to a dividend from Equitable Life did not arise until February 18, 1954, when the board of directors of Equitable Life set aside a designated portion of its surplus for the payment of dividends on qualifying policies and further, that the amount of the dividend was not determinable *276 with any degree of accuracy until March 29, 1954, when the amount of the dividend was determined by the actuaries of Equitable Life. The events fixing the liabilities of the parties and determining the amount thereof occurred not in 1953, but in 1954, and, under the accrual method of accounting, the dividends were properly accountable for in 1954. The determination by respondent which includes in 1953, the dividend received by petitioner in 1954, is disallowed. The second issue is, whether a failure by petitioner to accrue such dividends in 1953 constitutes a change in accounting methods which must be approved by respondent. Section 41 of the Internal Revenue Code of 1939 provides, in pertinent part: "The net income shall be computed * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but * * * if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." At this point, it should be noted that the respondent's *277 determination is based not upon a failure of petitioner's accounting method to clearly reflect net income, but rather upon an alleged change by petitioner in its accounting method, which change was made without the prior approval of respondent. The respondent relies upon his regulation, Regulations 118, section 39.41-2(c), which provides, in pertinent part: "A taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. For the purposes of this section, a change in the method of accounting employed in keeping books means any change in the accounting treatment of items of income or deductions * * *. Permission to change the method of accounting will not be granted unless the taxpayer and the Commissioner agree to the terms and conditions under which the change will be effected." Obviously, the regulation quoted applies only if petitioner has changed its method of accounting. Both parties agree that petitioner has, at all times pertinent, used an overall *278 accrual method of accounting in keeping its books. We have held that petitioner's treatment of the dividend received in 1954 in its 1953 accounting, was proper under the accrual method of accounting. This would seem to dispose of the second issue without further ado. The "change" which respondent relies upon was, in fact, not a change at all but rather an adherence to the method of accounting regularly employed in keeping its books. The treatment of the dividend in prior years by petitioner was an erroneous treatment and was inconsistent with the method of accounting regularly employed by petitioner in keeping its books. In Security Flour Mills Co. v. Commissioner, 321 U.S. 281, the Supreme Court said: "But we think it was not intended to upset the well-understood and consistently applied doctrine that cash receipts or matured accounts due on the one hand, and cash payments or accrued definite obligations on the other, should not be taken out of the annual accounting system and, for the benefit of the Government or the taxpayer, treated on a basis which is neither a cash basis *279 nor an accrual basis, because so to do would, in a given instance, work a supposedly more equitable result to the Government or to the taxpayer. * * *
"This legal principle has often been stated and applied. The uniform result has been denial both to Government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount." See also Booth-Newspapers, Inc., 17 T.C. 294, affd. 201 F. 2d 55 (C.A. 6, 1952); Hygienic Products Co. v. Commissioner, 111 F. 2d 330, affirming 37 B.T.A. 202, certiorari denied 311 U.S. 665. There is no basis for the proposition that because respondent has acquiesced in the erroneous treatment of the dividends in past years, such error should be perpetuated. Wiener Machinery Co., 16 T.C. 48; Mt. Vernon Trust Co. v. Commissioner, 75 F. 2d 938, certiorari denied 296 U.S. 587; Commissioner v. Rowan Drilling Co., 130 F. 2d 62. It is *280 not yet the law that wrongs, no matter how numerous, will make right. We hold that petitioner did not change its method of accounting in 1953. In view of the above holdings, it becomes necessary to consider whether dividends actually received by petitioner in 1953 but accrued by it in 1952, should be taken into account in 1953. By the same process of reasoning which led us to conclude that the 1954 dividend was accountable for in 1954, we conclude that the 1953 dividend is accountable for in 1953. The dividend received in 1953 was declared by the board of directors of Equitable Life on February 19, 1953, and was paid to and received by petitioner on March 27, 1953. Under the accrual method of accounting, the petitioner must include the amount of the dividend in its 1953 returns. The alternative determination of respondent is sustained. We are not unaware that this dividend has already been subjected to tax in 1952. Under the circumstances, we are controlled by the decisions in Crosley Corp. v. United States, 229 F. 2d 376; Commissioner v. Mnookin's Estate, 184 F. 2d 89, affirming 12 T.C. 744; and Kenosha Auto Transport Corp., 28 T.C. 421. *281 The application of sections 1311 et seq., of the Internal Revenue Code of 1954 is not before us. Our decision in this case must become final before the provisions of these sections are applicable. However, when our decision does become final, it appears that petitioner will have adequate relief from double inclusion of an item of gross income by virtue of these sections of the 1954 Code. Cf. Kenosha Auto Transport Corp., supra.
Decision will be entered under Rule 50. Footnotes
1. The provisions for payment of dividends on Policy No. 3039NJ are not shown by the record herein.↩