**BRYANT v. LEWIS et al.**

No. 7434.

Court of Civil Appeals of Texas. Austin.

April 16, 1930.

On Motion for Rehearing, May 14, 1930.

J. ·Mitch Johnson and N. C. Walker, both of San Saba, for appcllant.

M. M. White, of Temple, A. L. Curtis, of Belton, and White, Wilcox, Taylor & Gardner and Robert T. Miller, Jr., all of Austin, for appellees.

BAUGH, J.

Appeal is from a judgment for $3,828, based on a jury finding in favor of appellees, H. F. Lewis and W. H. Browning, against appellant, for attorneys' fees. The case arose under substantially the following facts: George Bryant, a bachelor, who resided at Lometa, in Lampasas county, Tex., died in August, 1927. At that time H. F. Lewis was, and for several years had been, his attorney. Miss Jennie Bryant, his niece, had for some 35 years prior to his death, and since she was a girl, lived with and made a home for him with the understanding or agreement that upon his death he would devise to her all his property. After his death, ·the appellant, Jennie Bryant, together with another niece, Mrs. Grace Blackwell, who had also lived with them and been reared by Miss Jennie from babyhood, came to the office of H. F. Lewis at Lampasas, in search of George Bryant's will. None was found, and, after many trips to see him, H. F. Lewis was employed by appellant to establish and collect her claim against the estate of George Bryant for services rendered to him, and to recover her interest also as one of his heirs. A written contract was entered into on January 13, 1927, whereby Lewis was to receive one-third of all he recovered for her as a creditor of the estate, 10 per cent. of the amount he should recover for her as an heir, plus a reasonable attorney's fee, if suit were necessary to recover her inheritance. The estate of George Bryant was valued at $74,000, with no claims against it save that of appellant and one of Mrs. Blackwell, also a claim· ant for services rendered to him and costs of administration.

Though the contract of employment was with Lewis, and an undivided one-half interest therein assigned by him to W. H. Browning, it appears that appellant at the time either herself employed, or fully agreed to the employment of W. H. Browning to represent her and be associated with Lewis, with the understanding that they should share equally in the fee provided for in the contract. These two attorneys were not partners, but practiced independently and maintained separate

offices. In February, 1927, appellees prepared and presented to the administrator of George Bryant's estate appellant's claim for $20,400.

Shortly after making said contract with appellant, the appellee H. F. Lewis entered into another contract with Mrs. Grace Blackwell to present her claim against the estate of George Bryant in the sum of $10,000, and was to receive for his services one-third of all sums recovered by him for her both as a creditor and as an heir of George Bryant. About two months after they were employed by appellant, during which time appellees diligently prosecuted appellant's claims both as creditor and heir, they were discharged by appellant. She employed other attorneys to represent her, who subsequently established her claims against the estate of George Bryant for $28,-000, resisted the claims of Mrs. Blackwell, presented by Lewis, and reduced same to the sum of $3,000.

Suit was upon a quantum meruit for services rendered. Two issues were submitted to the jury. To the first they answered that appellees' services to appellant were reasonably worth $3,828. In answer to the second, they found that appellant "agreed or consented for the plaintiff, H. F. Lewis, to represent Mrs. Grace Blackwell in the prosecution of her claims against said George Bryant's estate." The defenses urged by appellant on the trial, and the contentions here made, as stated in her brief, are:

"(a) Appellee Lewis having accepted employment from Mrs. Grace Blackwell to urge a claim for $10,000.00 against the estate of Geo. Bryant, deceased, that was adverse to the claim that he had agreed to urge for appellant against said estate he thereby breached his contract with appellant, and even if such adverse employment was entered into with the consent of appellant, appellees were not entitled to recover anything for services rendered—it being contrary to legal ethics and public policy for an attorney at law to represent adverse interests where it is contemplated that suit will have to be brought to enforce and protect such claims and interests, even with the consent of the parties.

"(b) That if under any circumstances, appellee Lewis would be permitted to represent the appellant and said Mrs. Blackwell, and recover for services rendered such parties, that he or some one for him, must have fully explained to appellant the nature and extent of interest that he was to represent for Mrs. Blackwell, and the manner in which such adverse interest would affect her claim, and after being assured that appellant fully understood the nature of such conflicting interest, have secured her consent to such employment, and the evidence being conclusive that he did not do this, the court should have granted the request for a peremptory instruction."

We sustain both of these contentions as to appellee H. F. Lewis. But they do not ap-

ply to appellee W. H. Browning. He had no interest in and no connection with the employment of Lewis by Mrs. Blackwell, nor did he have any interest in that claim. His employment was restricted wholly to the claims of Miss Bryant. Nor was payment for his services to her dependent upon a right in Lewis to recover for his services. It is true that the contract was made in the name of Lewis and an undivided one-half interest therein assigned by him to Browning, but suit is not upon said contract. And the undisputed testimony shows that appellant went to W. H. Browning before her contract with Lewis was signed, sought to employ him to represent her, and that, because of her negotiations with Lewis, he (Browning) declined to do so, unless associated with Lewis; that thereupon said employment or representation of her by them jointly was entered upon, not as partners, but as associate counsel, with her full knowledge, consent, and approval, if not at her affirmative request. Under such circumstances Browning was not in any manner disqualified from continuing to represent appellant, even though an independent act of Lewis did disqualify the latter. Browning's continued representation of appellant was not made dependent upon the continued representation of her by Lewis also.

What we shall say, therefore, concerning conflicting interests applies only to the representation of Lewis. Nor does it appear that there was any intentional wrongdoing by said appellee. Public policy and the standards of the profession, however, demand a close scrutiny of any improper conduct by attorneys in their relationship to their clients, and, however honest his intentions may be, an attorney should never put himself "in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent." Strong v. International Building, Loan & Inv. Union, 183 Ill. 97, 55 N. E. 675, 676, 47 L. R. A. 792. See, also, Myers v. Crockett, 14 Tex. 257; O'Leary v. Durant, 70 Tex. 409, 11 S. W. 116; Payne v. Livingston (Tex. Civ. App.) 253 S. W. 701; 5 Tex. Jur. 432; 6 C. J. 619, 722; 2 R. C. L. 973.

There are exceptions to this rule where an attorney may represent adverse interests if not conflicting with full knowledge and consent of both parties; where, for example, he adjusts differences as an arbiter or effects a compromise between adverse parties. But even in such cases all the facts, and the extent of such adverse representation, should be fully understood by both parties. But no instance is called to our attention, nor have we found any, wherein a conflict of interests of two clients continuing throughout the controversy was represented by the same attorney.

■ The relationship of attorney and client is an unusual one. With the ever-increasing multiplicity of laws, and the growing complexity of our economic and civil relationships, the field of service of the attorney becomes increasingly important; and the necessity for the average layman to depend upon the judgment, fidelity, diligence, and skill of his attorney increases in like degree. He owes his client the utmost good faith in his dealings with him, and to affirmatively disclose to him, not only all material facts which would affect their relationship but to disclose the legal consequence of those facts as well.

■ In the instant case, if the claimants whom Lewis undertook to represent had not been heirs also of George Bryant, deceased, there being no other claims against his estate, and there being more than enough assets to pay both claims in full, there would have been no such conflict in their respective claims as would disqualify him from representing both. But the mere statement of the facts makes obvious an irreconcilable conflict, preventing said attorney from diligently prosecuting both of such claims simultaneously. The estate was valued at $74,000. He was presenting a claim for appellant for $20,400, of which he was to have one-third as a fee. In addition thereto, he was also obligated to recover for her the one-eighth interest in the residue of that estate, after debts were paid, of which he was to receive 10 per cent. as a fee. Under his contract with Mrs. Blackwell, subsequently made, he was to receive one-third of all he recovered for her either as a creditor of said estate or as an heir. Whatever he recovered for Mrs. Blackwell reduced by that much the residue of the estate of which appellant, also his client, was to receive one-eighth. In other words, the more he recovered for Mrs. Blackwell, the more his own fee would be, but the smaller, proportionately, would be the inheritance of Miss Jennie Bryant which he had also undertaken to recover for her. Had he recovered for Mrs. Blackwell the full $10,000 asked for by him, under his contract with her, his fee would have been $3,333.33; but in doing so, he would have reduced the amount of the inheritance of appellant by $1,250. On the other hand, if he had represented appellant solely, and had resisted and defeated the claim of Mrs. Blackwell, which was in fact reduced eventually by other attorneys resisting same to $3,000, he would have increased appellant's inheritance by $1,250, of which he would have received only 10 per cent. or only $125 as a fee. It is obvious, therefore, that there was not only an irreconcilable conflict between the interests of his two clients; but that he had placed himself by a written contract with Mrs. Blackwell in a position where there was such irreconcilable conflict between his own interests and that of his client, appellant herein, in the subject-matter of the controversy, as to make it impossible for him to represent both even with their full knowledge and consent.

■ Though there was evidence to sustain the jury finding that appellant consented to the representation by Lewis of the claim of Mrs. Blackwell, there was no evidence that he made full disclosure to her of the terms of the contract he had with Mrs. Blackwell nor of the character and extent of their conflicting interests. Appellees urge that, having knowledge of Mrs. Blackwell's claim, appellant necessarily knew the extent and nature of their conflicting interests. This cannot be presumed. It does not appear to have been realized by Lewis himself. On this point appellee Lewis testified: "I figure that if the estate was worth $90,000.00, like Miss Jennie represented it, and if she recovered what she was claiming, $20,000.00, and her interest in the estate ran to $10,000.00, there was ample money there for both of them, and I don't think their interests conflicted."

On cross-examination he also testified: "I did not expressly tell Miss Jennie Bryant that I would like for her to give me permission to represent Mrs. Blackwell in this case; they came together to me. If Miss Jennie Bryant had requested me, as her attorney, to withdraw the claim of Mrs. Blackwell, I would have done it if they told me their interests were antagonistic. As to whether I knew, as an attorney, that their interests were antagonistic, will state that I knew there might be some little matters that might arise between them, but they seemed to be so congenial and having lived and grown up together and coming to me together and telling me about these matters and wanting me to represent both of them, I didn't dream of anything. Nothing was said about Miss Jennie wanting to give any of her estate of Mrs. Blackwell, and at that time I didn't think of any conflict of interests."

Appellant testified in this connection as follows: "Mr. Lewis never did get my permission or request for him to represent Mrs. Blackwell; I never did give him any permission and never did talk to him about it and he never talked to me about it. * * * Mr. Lewis didn't explain to me about the nature of the account he was going to present, and he never did tell me that in representing Mrs. Blackwell, it would be necessary for him to recover part of the estate which I was entitled to; he never mentioned it in any way, and I never consented for him to represent her in any way."

From the foregoing we think it clear that, even if the employment were such that Lewis could represent both parties by agreement, there was lacking that full explanation to her of the full nature and extent of the conflict of their interests, as would qualify him to act for both. The record discloses that appellant discharged appellees within about 60

days after said contract was made, before any suits were filed by them, employed other attorneys, and did resist the claim of Mrs. Blackwell against said estate, and that same was reduced to $3,000, in an agreed judgment wherein she was represented by Lewis.

■■ There was evidence to show that Miss Bryant and Mrs. Blackwell were on intimate terms with each other, the former having reared the latter from the time she was two months old; that they came together to Lewis' office at numerous times, first in seeking a will of George Bryant, and subsequently in consulting him about their respective claims against his estate. Up to the time of discharge, Lewis had no intimation of any disagreement between Miss Bryant and Mrs. Blackwell, nor any indication that appellant objected to his representation of both of them. We think that Lewis was not guilty of any intentional wrongdoing or lack of good faith in accepting said employment from Mrs. Blackwell. But, because of the nature of said representation and the irreconcilable conflict of their interests in the same subject-matter, we conclude that he was not entitled to recover anything for his services to appellant.

■ We deem it unnecessary to discuss the other issues raised by appellant. The value of the services found by the jury was supported by competent evidence. The record also conclusively discloses, we think, that it was contemplated and understood by all parties, including appellant, at the time of the employment that Lewis and Browning were to be associated equally in representing appellant and were to share equally in whatever fee they earned. W. H. Browning, not being disqualified in any manner to represent appellant, was entitled to recover a reasonable fee for his services. Under these circumstances, and for the reasons hereinabove stated, the judgment of the trial court is reversed as to H. F. Lewis and judgment here rendered that he take nothing. As to W. H. Browning, the judgment is reformed so that he recover $1,914, being one-half of the amount found by the jury, and, as so reformed, is as to him affirmed.

Reversed and rendered in part, and in part reformed and affirmed.

On Motion for Rehearing.

Careful consideration of appellant's motion for rehearing has convinced us that we erred in rendering judgment herein for W. H. Browning for the sum of $1,914, or one-half of the value of the services of both Lewis and Browning, as found by the jury.

■ It is obvious that the jury considered the services of both attorneys in arriving at their verdict on this issue. Whereas the services of H. F. Lewis, he not being entitled to any compensation, should not have been con-

sidered in arriving at the value of W. H. Browning's services. Appellant was entitled to a finding of the value of the services of W. H. Browning, independent of and apart from any services rendered appellant by Lewis.

Appellant's motion is therefore granted to this extent: The judgment of the trial court is reversed, and the cause remanded as to W. H. Browning, with instructions to the trial court that upon another hearing the only issue to be determined be the reasonable value of the services of W. H. Browning, and that, upon the determination of that issue, judgment be rendered accordingly. In all other respects our former opinion herein is in all things adhered to; and appellant's motion is in all other respects overruled.

Granted in part, and in part overruled.