**Shelby OWENS and Dorothy H. Owens, Husband and Wife, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17524.**

United States Court of Appeals
Fifth Circuit.
Dec. 29, 1959.

252

Jones, Circuit Judge, dissented.

Wentworth T. Durant, Robert J. Hobby, Dallas, Tex., for petitioners.

Arthur I. Gould, Atty., Robert N. Anderson, Lee. A. Jackson, Dept. of Justice, Washington, D. C., Rollin H. Transue, Sp. Atty., Arch M. Cantrall, Chief Counsel, I. R. S., Washington, D. C., Charles K. Rice, Asst. Atty. Gen., for respondent.

Before CAMERON, JONES and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

This petition for review of a decision of the Tax Court presents this question: Whether the Tax Court correctly held that the taxpayer [1] was not entitled to deduct, under § 23(a) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (2), an amount paid to an attorney with respect to legal services rendered in connection with a divorce proceeding which included a property settlement, when it is undisputed that the entire amount was paid for the protection of income or income-producing property and no part was paid in connection with the personal matters involved in the divorce proceedings.

The Commissioner determined a deficiency in taxpayer's income tax for the year 1953 resulting from his disallowance of the deduction of a $7,500.00 attorney's fee paid during the year. The Tax Court [2] rendered its decision in favor of the Commissioner, which, under the taxpayer's petition, we are called upon to review.

We adopt the findings of fact made by the Tax Court:

"Petitioners are husband and wife and are residents of Arlington, Texas. They filed a joint return for the calendar year 1953 with the district director of internal revenue at

1. We follow the Commissioner's lead in referring to Shelby Owens alone as taxpayer or petitioner, his wife Dorothy H. Owens being party to the case only because she filed a joint return with her husband for the year under review.

2. Stating that: "The sole issue for determination is whether the sum of $7,-500.00 which was paid to an attorney in 1953, is an expense incurred for the production of income or for the management, conservation or maintenance of property held for the production of income."

Dallas, Texas, on September 15, 1954.

"From 1922 to December 10, 1948, petitioner Shelby Owens (hereinafter called petitioner) was married to Margaret Stuckert Owens (hereinafter called Margaret). In 1946 they became estranged, and they separated during the year. At that time petitioner had various business interests but his chief business and source of income was a lumber business known as Stuckert-Owens Lumber Company, which was carried on as a partnership between petitioner and J. Lamar Stuckert, a nephew of Margaret. Each partner owned a 50 per cent interest in the business.

"During all of their married life, petitioner and Margaret were residents of Texas, a community property state, and all of the property and business interests which were owned by them at the time of the separation were owned in community.

"Due to the circumstances leading up to their separation, Margaret became very embittered and generally let it be known that she was going to get everything she could from petitioner by virtue of the divorce proceedings. To this end she contacted J. Lamar Stuckert, her nephew and petitioner's partner, and attempted to negotiate a new partnership arrangement of the lumber business with him, contingent upon her being able to wrest this from petitioner in the divorce proceeding. J. Lamar Stuckert declined any such arrangement for reasons of his own and so advised petitioner. He told petitioner that he would dissolve their partnership, regardless of cost, if Margaret were to obtain any active interest in the business.

"J. E. Foster, with whom petitioner was similarly associated in another business, became alarmed at these events, forced a dissolution of their partnership, and bought out petitioner's interest. This left petitioner dependent on the Stuckert-Owens Lumber Company as his primary source of income.

"During 1946, Margaret retained Hal Lattimore, a Fort Worth Attorney who was a lifelong friend of both parties, as her counsel and paid him $2,500 in cash in advance for representing her in the divorce proceedings. Petitioner was represented by his brother Richard, also a Fort Worth Attorney, who customarily handled his legal affairs.

"Petitioner did not plan to, and made no effort to, contest the divorce proceedings, but was anxious only to save his interest in Stuckert-Owens Lumber Company as his source of income. Richard told him that he did not believe he could handle any of the property settlement negotiations because of the family relationship and his personal acquaintance with Margaret. Richard, who had his place of business in the same building with Lattimore, Margaret's attorney, met with Lattimore often but did not discuss the property settlement with him. Margaret informed Lattimore of her desire to obtain petitioner's interest in the lumber company, $100,000 in cash, the home, and automobile as her settlement.

"Petitioner consulted Lattimore, who was familiar with his business affairs, and told him that it was essential that he retain his full interest in the lumber business, if possible. He told Lattimore that he would pay the $100,000, his home and the property out at the lake, and the other things mentioned in the property settlement if he could keep the lumber business. He promised to pay Lattimore $7,500 and not to contest the divorce if Lattimore could get Margaret to agree to let him keep the lumber business. Lattimore agreed that it would be for the best interest of petitioner to keep the lumber business and, as

Margaret's attorney, would recommend that she accept petitioner's offer. Lattimore informed Margaret of the conversation he had with petitioner and advised her to accept petitioner's offer.

"The property settlement was arranged whereby petitioner would retain his interest in the lumber company, as he had desired. Richard Owens reviewed the final settlement for petitioner and recommended that he accept it because it was in his best interests. On September 28, 1948, Shelby Owens executed the property settlement. Richard Owens delivered the settlement to Margaret's attorney, who then secured Margaret's acceptance of it as so constituted.

"It was agreed that the $7,500 which petitioner was to pay Lattimore for his efforts in securing the property settlement as petitioner desired would be incorporated in the divorce decree as the attorney's fees. The property settlement and the attorney's fees were incorporated in the divorce decree entered December 10, 1948.[3]

"After the divorce decree and property settlement, Lattimore prepared a note for $7,500 as payment from petitioner, which petitioner signed and returned to him.

"Petitioner did not pay Richard Owens any monies for his efforts on behalf of petitioner in the divorce proceedings or property settlement. He did, however, do some work for Richard.

3. The settlement agreement filed in the Texas Court and its decree granting the divorce and giving effect to the agreement are in evidence, and neither one mentions the amount of the attorney's fee or whether or not the $7,500 was included. It was undisputed that Owens gave a promissory note sometime after the decree was entered in 1948, and that the note was not paid until 1953, nearly five years later.

4. The position consistently taken by the Tax Court was thus expressed by its

"In 1953, a tax deficiency was assessed against Lattimore. This deficiency was satisfied by payment of the $7,500 note which was applied to the tax deficiency. Petitioner deducted the $7,500 attorney's fees in his 1953 tax return. Respondent disallowed this deduction."

The facts being undisputed, the Tax Court had before it only a question of law, which is now presented to us. The Tax Court stuck to its practice of disallowing deductions connected with divorce proceedings under its opinion that such proceedings involve primarily an essentially personal relationship and that every payment made by a husband in the course of such a proceeding takes its character solely from that relationship.[4] Such a course, we think, is not consonant with established legal principles and would, as applied here, tend to frustrate congressional intent as expressed in the Revenue Law.

We are of the opinion that the facts as the Tax Court found them compel a decision in favor of the taxpayer. His brother was representing him in connection with the personal relationships present in the divorce action brought by his wife, and they agreed that he had no defense, and taxpayer never planned to defend the divorce action. His dealings with his wife's attorney in connection with which the $7,500 fee was paid had their inception solely in his purpose to protect, from the determined designs of his wife, the lumber business which undisputedly was his main hope for a livelihood and was an unfailing producer of income. It is evident that the two years

opinion in F. C. Bowers, 25 T.C. 452; "In spite of the variations in fact we think that the expenses sought to be deducted here were incurred in a situation which primarily and essentially involved personal relationships and personal considerations, and therefore constituted personal expenses which have been held to be non-deductible in cases such as Lindsay C. Howard, 16 T.C. 157, and Thorne Donnelley, 16 T.C. [1196], 1201."

elapsing between their separation and the filing of the divorce action were largely devoted to the effort of the wife's attorney, mutual friend of both husband and wife, to dissuade her from her expressed intention of holding on to her interest in the Stuckert-Owens Lumber Company,—a course which would inevitably have resulted in disaster to that company. Since Texas was, and is, a community property State, her declared determination was more than an idle threat.[5] The clear language of § 23(a)(2) of the Internal Revenue Code of 1939, under the undisputed facts accepted by the Tax Court, required that taxpayer be allowed a deduction for this attorney's fee:

"(2) Non-trade or non-business expenses.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income." [6]

The parties seem to concur in the idea that there is conflict in the decisions of the courts on the question before us, but a close study of the cases leads us to the conclusion that the conflict is more apparent than real, resting on differences in the several factual situations rather than disagreement as to the meaning of the statute.[7]

The cases nearest this one on the facts are Baer and Bowers supra. The facts of Baer differ from those here only in that the attorney's fee in controversy was paid to the husband's attorney instead of to the wife's. The Tax Court had held there, as here, "that this payment involved personal relationships as distinguished from business relationships, and hence, was not deductible under the provisions of § 23(a)(2) * * *." The Court of Appeals disagreed with this conclusion, holding that "The services of these attorneys were certainly appropriate, and hence, the payments were necessary, and if for the conservation or maintenance of property held for the production of income,

---

5. Cf. 23 Texas Jurisprudence §§ 36, 83 and 88, and Vernon's Texas Civil Statutes, Article 4638.

6. This language from Income Tax Regulation 118 is also applicable:
"(2) (b) The term 'income' for the purpose of section 23(a)(2) comprehends not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years; and is not confined to recurring income but applies as well to gains from the disposition of property. * * * Similarly, ordinary and necessary expenses incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired. Expenses incurred in managing, conserving, or maintaining property held for investment may be deductible under this provision even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and

even though the property is held merely to minimize a loss with respect thereto * * *."

7. Petitioners rely chiefly upon Trust of Bingham v. Commissioner, 1945, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670; Baer v. Commissioner, 8 Cir., 1952, 196 F.2d 646; McMurtry v. United States, 1955, 132 F.Supp. 114, 132 Ct.Cl. 418, and Bowers v. Commissioner, 6 Cir., 1957, 243 F.2d 904; and upon language of certain decisions sustaining in general the position of the Commissioner, but differentiating the cases at hand from the decisions in Baer and McMurtry, supra, e. g., Tressler v. Commissioner, 9 Cir., 1955, 228 F.2d 356; Howard v. Commissioner, 9 Cir., 1953, 202 F.2d 28; and Smith's Estate v. Commissioner, 3 Cir., 1953, 208 F.2d 349.

The Respondent in turn relies chiefly upon Lewis v. Commissioner, 2 Cir., 1957, 253 F.2d 821; Lykes v. United States, 1952, 343 U.S. 118, 72 S.Ct. 585, 96 L.Ed. 791; Howard v. Commissioner, 9 Cir., 1953, 202 F.2d 28; Brown v. Commissioner, 5 Cir., 1954, 215 F.2d 697; and Richardson v. Commissioner, 4 Cir., 1956, 234 F.2d 248.

then they were deductible from his gross income." [196 F.2d 650.] The court made a careful analysis of the state of the law before the 1942 amendment, commented on the decision of the Supreme Court in Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783, quoted the report of the House Ways and Means Committee defining the reasons for the change, and held that the decision of the Supreme Court in Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670, was in point and that it sustained Baer's contention.

The Eight Circuit Court felt that the efforts of the attorneys which had resulted in the saving of some of Baer's investments from being wrecked "were not to prevent the payment of the liability due Mrs. Baer but to so adjust the method of satisfying that liability as not unnecessarily to reduce petitioner's income from the property which confessedly he owned." It added:

"The mere fact that the same attorneys acted for petitioner in connection with his domestic controversy does not convert the services rendered by them in the matter of the negotiation of the agreement by which the liability to Mrs. Baer for property was so adjusted as to conserve and protect Mr. Baer's specific holdings in Stix, Baer & Fuller Company to personal living or family expenses * * *. This expenditure had a proximate and direct relation to the conservation and maintenance of specific property, the ownership or control of which enabled petitioner to receive income." (196 F.2d at page 651).

The court in Baer further distinguished its holding from that of the Supreme Court in Lykes supra, finding that, as recognized by the Supreme Court in Lykes, the deductibility "turns wholly upon the nature of the activities to which they relate." We find the reasoning of the court in Baer to be unanswerable as applied to the facts of that case, and to be equally applicable to the facts of this one.

The same is true of the decision of the Court of the Sixth Circuit in Bowers, whose facts likewise differ from those here only in that the $45,000 attorney's fees were paid to the husband's attorneys rather than to the attorney representing his wife. There, as here, the wife was bent upon a course of action which would greatly handicap the husband in making a living. The attorneys, by long and patient persuasion, saved the chief business in which the husband was engaged, but the Tax Court would not allow deduction of the portion of the fee attributable to those efforts. The reversal by the Court of the Sixth Circuit is based upon reasoning which fits the problem before us.

We do not think that the fact that the payment here was made to the wife's attorney has any determinant force. The stipulation provided, and the Tax Court found, that Mrs. Owens had paid her attorney $2,500 to represent her long before the divorce action was brought. Petitioner's brother, who represented him generally in the divorce suit, was not in position to handle the property settlement. It is not contended that the wife did not know and acquiesce in the husband's agreement to pay the fee to her lawyer or that she did not freely enter into the property settlement agreement engineered by him pursuant to that arrangement. The ultimate and only fact before the Tax Court and before us was and is whether the $7,500 was actually paid to the attorney in connection with the saving of the business in which the husband was interested. The evidence as to this was undisputed, and the Tax Court's finding recognized that the money had no connection at all with the personal relationship between the husband and wife or the granting of a divorce to her, and that it was paid solely to salvage the lumber business. In other words, the domestic dispute furnished the occasion, but not the motive, for the payment of the $7,500 to the attorney.

In this tax case it is not our function to consider or determine any question relating to professional ethics or the propriety of this action and we do not do so. It is uncontradicted, and the Court so found, that the wife was fully informed by Lattimore of Owens' proposal. Acceptance of this divided responsibility by the long time intimate friend of both was made by the wife, and there is no suggestion by either of the parties to that domestic strife that her interests were not fully asserted and protected by the counsel who merited their mutual trust and confidence. But more important, neither the Tax Court in its findings and opinion, nor the Government in its brief here undertake to criticize the conduct or attribute to it a tax significance based upon any question of professional ethics. It was treated by the Tax Court and the Government by brief as though the $7,500 was paid to an outside, separate lawyer. We have followed the same approach and that course is convincing that Lattimore was employed by taxpayer solely to save valuable income-producing property; and he performed his engagement.

No good purpose will be served by a further attempt to analyze or reconcile the various decisions the parties rely upon. It is sufficient to say that we think that the facts of this case bring it directly within the terms of the statute as construed in the Bingham, Baer and Bowers cases. The decision of the Tax Court is therefore reversed and the case remanded for entry of judgment in favor of the petitioners.

Reversed with directions.

JONES, Circuit Judge (dissenting).

For the reasons here given I cannot agree with the majority. The taxpayer, Shelby Owens, and his then wife, Margaret Owens, were equal owners, as husband and wife, by virtue of the Texas community property law, of a half interest in a lumber business. The majority speaks of the taxpayer making the questioned payment for the "protection of income-producing property." The majority talks of "saving his interest", "retaining his full interest", and "keeping the lumber business." It might more accurately have spoken of acquiring the wife's interest. The interest in the lumber business was as much the property of the wife as of the taxpayer. The settlement agreement did not provide that the interest in the lumber business should be saved, retained or kept by the taxpayer. It provided that it should "become the property of" the taxpayer. The judgment of the court which entered the divorce decree provided that the taxpayer "have and recover from" his then wife who was divorcing him, "all of the remainder of the community property and all property standing in the name of Shelby Owens, including, but not exclusively, interest in Stuckert-Owens Lumber Company," etc. The taxpayer, of course, had the right of control of the community property during the marriage. If the payment which the taxpayer made was in fact made for services rendered to the taxpayer, of which more will be hereafter said, such payment was made primarily for the purpose of effecting the acquisition of his wife's interest in the lumber business rather than protecting his own. Legal fees paid for the acquisition of property, whether income producing or not, are usually not deductible but are treated as capital expenditures which become a part of the cost. Mertens Law of Federal Income Taxation, §§ 25.26, 25 A. 15.

The property settlement in the divorce decree provided that the taxpayer should pay "attorney's fees and costs of suit in the divorce proceedings to be filed." The divorce decree approved the settlement and recited "that the attorney's fees decreed are reasonable and have been incurred." The closing paragraph of the decree stated "that all of the above decreed has been performed except as to the attorney's fees to be paid to H. S. Lattimore." This is the extent of the references to attorney's fees in the divorce proceeding in so far as the record before us discloses. From the testimony of Lattimore it is quite clear

that he applied to the court for an attorney's fee for representing the wife and the court fixed that fee, to be paid by the husband, in the amount of $7,500. There was no reason for any reference to attorneys' fees in the settlement agreement and in the divorce decree if each party paid his and her own attorney, and it would seem that any such reference would usually be out of place in such instruments.

The majority does not feel that it is this Court's function "in this tax case" "to consider or determine any question of professional ethics." Nor do I feel any necessity for so doing. But if there should be a question as to whether the payment was made for representing the wife or the taxpayer, the conduct of the attorney might be material. An attorney can only represent conflicting interests with the "express consent of all concerned." Here the wife's lawyer "told her what the arrangement was with him, that he would pay the fee that the court would assess to be paid by him and would not contest the amount." No express consent by her is shown. This seems to me important only in considering the question as to whether the fee was paid for representing the husband, a question which the Tax Court did not consider. Even though an attorney represents conflicting interests with the express consent of both parties, he cannot properly be paid a fee by both. Easley v. Brookline Trust Co., Tex.Civ.App., 256 S.W.2d 983; Norman v. Wilson, Tex.Civ.App., 41 S.W.2d 331; Bryant v. Lewis, Tex. Civ.App., 27 S.W.2d 604. I think that since the fee here involved was treated in the divorce suit as a payment of an attorney's fee for representing the wife, and I believe the record compels the conclusion that it was so paid, it should be treated as such in this case; and this would be my view regardless of which counsel undertook the preparation of the settlement agreement and the divorce decree. I would rather rely upon the representations to the state court in the divorce proceedings than upon the taxpayer's present position. I cannot reconcile them.

I agree with the majority that, in a proper case, a deduction may be allowed for an attorney's fee incurred for the conservation of income-producing property even though the matter arises in connection with a divorce. I do not agree that this is such a case. If there are good grounds shown by the record for the affirmance of a Tax Court decision it should be affirmed even though the reviewing court is in disagreement with the ground adopted by the Tax Court. Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224, rehearing denied 302 U.S. 781, 58 S.Ct. 478, 82 L.Ed. 603.

Perhaps, in reaching conclusions upon matters not decided by the Tax Court, I have indulged in factual inferences which should have been first passed upon by it. If so, then I think the cause should be remanded with directions to consider the matters here discussed. I do not think the Tax Court should be directed to enter judgment for the taxpayers. I therefore dissent.