Talbot PATRICK and Commercial Bank of Charlotte, Administrator of the Estate of Alethia M. Patrick, deceased, Appellees,

v.

UNITED STATES of America, Appellant.

No. 8259.

United States Court of Appeals Fourth Circuit.

Argued Jan. 25, 1961.

Decided March 27, 1961.

2. Of course, this is not synonymous with "a trial de novo," as appellee argues.

We adopt the findings of fact by the District Court which are substantially as follows:

The taxpayer was sued for divorce. The wife sought an absolute divorce, court supervision of the properties, a property settlement, child custody and attorney fees. The taxpayer neither admitted nor denied the alleged grounds for divorce. He did not testify at the trial. Extended negotiations were carried on by attorneys for both parties, culminating in a property settlement. The trial court in South Carolina granted the wife an absolute divorce, approved the property settlement and ordered the taxpayer to pay all attorney fees for both parties, provision for which had also been previously agreed upon.

At the time of the institution of the divorce proceedings and for some years prior thereto the taxpayer was the operating head of the Herald Publishing Corporation. He owned 28% of the stock and his wife owned 28%. The eldest son owned 9% and the balance thereof was held in trust for the use and benefit of the children. The only other income-producing property was real estate (a building mainly occupied by the publishing corporation). The taxpayer had an 80% undivided interest therein and the wife had a 20% undivided interest.

The pertinent portion of the settlement agreement provided the taxpayer would purchase the wife's 28% interest in the publishing corporation stock at fair market price, conditioned upon the further agreement that the stock acquired from the wife, together with the taxpayer's stock in the publishing corporation (56%) would pass to the children on his death, or if the stock was sold prior thereto, the proceeds would become the property of the children. The undivided interests of the taxpayer and his wife in the income-producing real estate were placed in trust for the children, subject to a lease to the publishing corporation for a term of years.

Arthur I. Gould, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attorneys, Department of Justice, Washington, D. C., and Joseph E. Hines, U. S. Atty., Spartanburg, S. C., on brief), for appellant.

Robert M. Ward, Rock Hill, S. C., for appellees.

Before SOPER and HAYNSWORTH, Circuit Judges, and LEWIS, District Judge.

LEWIS, District Judge.

This is an action to recover income taxes paid under a deficiency assessment arising from the disallowance of a deduction for legal fees paid to taxpayer's and his former wife's attorneys for services rendered in connection with a property settlement incident to a divorce of the parties.

The District Court for the Western District of South Carolina, hearing the case without a jury, sustained the contentions of the taxpayer, 186 F.Supp. 48, and the Government appealed.[1]

---

1. The Government did not appeal the constructive dividend issue decided in favor of the taxpayer.

The attorney fees incurred by the parties for the divorce action and settlement agreement were $12,000 each, or a total of $24,000, $4,000 of which was for handling of the divorce, $4,000 for placing the real estate in trust ($3,200 of which was charged to the taxpayer and $800 to the wife), and $16,000 for the rearranging of stock ownership and control of the Herald Publishing Corporation. Prior to the institution of the divorce proceedings the taxpayer, because of family unity, controlled the publishing corporation and was editor and publisher of the newspaper and drew salaries therefrom.

During the pendency of the divorce proceeding there was more than a possibility the control of the publishing corporation would be sold and that the income-producing real estate might be partitioned and/or sold. Prospective purchasers of the publishing corporation were interviewed by the wife's attorneys. The wife made no immediate threat upon taxpayer's operation or control of the newspaper and did not seek to enjoin or encumber his interest therein. The eldest son appeared to favor the mother in the marital difficulties and the wife and children were very much opposed to the apparent remarriage of the taxpayer.

The taxpayer contends that that portion of the attorney fees paid for legal services rendered solely in connection with the property settlement was deductible pursuant to Title 26 U.S.C. § 212(2) (1954 ed.).[2]

The District Court found the legal fees in the amount of $3,200 and $16,000 were reasonably and proximately related to the management, conservation, or maintenance of property held for the production of income and were therefore an allowable deduction to the taxpayer. We agree.

The Government insists however, that legal fees paid in connection with a divorce proceeding, accompanied by a property settlement, are incurred in relation to the dissolution of a personal family relationship, and that Title 26 U.S.C. § 262 (1958 ed.)[3] specifically denies a taxpayer a deduction with respect to a personal or family expense. Such is correct, in those cases where the expenses incurred were paid for legal services in representing the parties in a divorce proceeding, or in contesting the liability accruing as a result thereof. In this case $4,000 in legal fees were incurred in the handling of the divorce proceeding. No deduction or claim therefor was made. The taxpayer incurred additional legal fees in the amount of $3,200 for services rendered in connection with the preparation of the trust agreement and the leasing of the income-producing real estate, of which he owned a 4/5th undivided interest, and $16,000 in additional legal fees for the rearranging of the stock ownership and control of the Herald Publishing Corporation.

The Government does not deny the reasonableness of the fees or the necessity therefor. It contends: "When the distinction between immediate purpose and incidental consequence is given effect, attorneys' fees paid in relation to a property settlement under a divorce decree are necessarily nondeductible as being personal expenses, regardless of whether there is an effort by one spouse to maintain and conserve income-producing property". With this we do not agree.

The Eighth, Sixth and Fifth Circuits and Court of Claims[4] have all reached the opposite result in regard to this ques-

---

2. "Expenses for production of income. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year— * * *

"(2) for the management, conservation, or maintenance of property held for the production of income."

3. "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."

4. Baer v. Commissioner, 8 Cir., 196 F.2d 646; Bowers v. Commissioner, 6 Cir., 243 F.2d 904; Owens v. Commissioner, 5 Cir., 273 F.2d 251; McMurtry v. United States, 132 F.Supp. 114, 132 Ct.Cl. 418.

tion. An examination of those cases indicates the legal fees were allowed as a deduction because they were not expended to resist a liability, but were spent to find a manner in which it could be met without depriving taxpayer of his income or income-producing property.

In the Baer case the Court stated [196 F.2d 649]:

" * * *. The controversy did not go to the question of the liability but to the manner in which it might be met by the petitioner without greatly disturbing his financial structure. * * *."

In the Bowers case the Court allowed a $45,000 attorney fee as claimed, with the statement that, as in the Baer case, " * * * there was little occasion for the services of a taxpayer's lawyers, in divorce proceedings proper, * * * such services were largely devoted to adjusting the taxpayer's liability to his wife * * *." [243 F.2d 907]

In the Owens case the Court stated [273 F.2d 256]:

" * * *. The ultimate and only fact before the Tax Court and before us was and is whether the $7,500 was actually paid to the attorney in connection with the saving of the business in which the husband was interested. * * *. In other words, the domestic dispute furnished the occasion, but not the motive, for the payment of the $7,500 to the attorney."

In the McMurtry case the Court of Claims gave the taxpayer an opportunity to show to what extent legal expenses were incurred in conservation and maintenance of property.

The Government relies mainly upon Lykes v. United States, 343 U.S. 118, 72 S.Ct. 585, 96 L.Ed. 791, and Lewis v. Commissioner, 2 Cir., 253 F.2d 821. Neither of these cases are in conflict with the above cited cases. In the Lykes case deductibility turned wholly upon the activities to which they were related. The taxpayer gave away stock with a fixed value and the Commissioner of Internal Revenue revalued it and assessed a deficiency. The fees were incurred in contesting this deficiency or in resisting liability.

In the Lewis case the Second Circuit refused to allow a deduction of attorney fees on the theory that such fees were spent in resisting legal separation proceedings and liability.

The other cases relied on by the Government in support of its theory are clearly distinguishable in that the facts therein recited are not analogous to the facts in this case.[5]

Richardson v. Commissioner, 4 Cir., 234 F.2d 248, 253, likewise does not support the Government's position. In that case this Court stated:

" * * *. It is clear that the attorneys for the husband expended no effort in the conservation or maintenance of his property, as envisioned by the statute. * * *. Their services were directed to preventing any liability being imposed upon the husband for his wife's support, and it is this for which they were paid. * * * even if any part of the fee paid by him to his attorneys could be said to be for services in conserving his property, no effort has been made to show what part of the sums paid should be allotted to that purpose. * * * unless and until it is shown what part of the sums paid them are applicable to that part of their efforts there is no basis upon which to grant a deduction.

" * * *. None of the conditions which formed the basis for the decision in the Baer case exists in the case now before us."

5. Harris v. United States, 9 Cir., 275 F. 2d 238; Tressler v. Commissioner, 9 Cir., 228 F.2d 356; Howard v. Commissioner, 9 Cir., 202 F.2d 28; Smith's Estate v. Commissioner, 3 Cir., 208 F.2d 349; Norton v. Commissioner, 8 Cir., 192 F.2d 960; Douglas v. Commissioner, 33 T.C. 349; Donnelley v. Commissioner, 16 T.C. 1196.

The Government further contends however that if this case were pending in a Circuit that had followed the reasoning set forth in the Baer line of decisions, the taxpayer's claim of deduction would not be allowed because the essential factor in the application of those decisions was a threat to income-producing property.

It is true the wife, in this case, did not commit an overt act, to either enjoin, damage or encumber the taxpayer's income-producing property. This was not necessary. We conclude that all of the taxpayer's income-producing properties were in great peril until and unless a satisfactory property settlement agreement was concluded.

At the time he was sued for divorce the taxpayer was a stockholder in Herald Publishing Corporation. He owned 28%, his wife 28%, their son Hugh 9%, with 7% additional in trust, and two other children owned 28% of the stock in trust. Because of the family unity which had existed, taxpayer had in fact controlled the Herald operations and had been editor and publisher of the newspaper and a director and president of the corporation and drew salaries therefrom. When the divorce suit was commenced against him practically everything he had was at stake. There was the distinct possibility that control of the corporation would be sold; in fact, the wife's attorneys were approached by prospective purchasers. It was not necessary for his wife to threaten to take from him the Herald stock. The wife, with her own stock and as a trustee jointly controlling the stock of her children, with the support of her son Hugh, controlled the corporation. With the family unity broken this control could have been, and probably would have been, exercised by the wife to the taxpayer's detriment.

Over a period of years he had built up the newspaper and if he lost control his income therefrom would not only have been impaired, it would have been totally destroyed. In addition, upon the entry of a divorce decree the wife acquired the right to partition and/or force the sale of the income-producing real estate which housed the publishing corporation, thereby jeopardizing its very existence.

The husband had no defense to the merits of the divorce. He did not contest or resist the liabilities accruing to the wife and children and the legal fees claimed as a deduction were not expended for that purpose. They were spent by the taxpayer for services rendered through long and continued negotiations, designed to find a means in which the taxpayer could meet these liabilities without destroying his income and his income-producing status.

The fact that the agreement between the parties was concluded in apparent harmony and without any overt act on the part of the wife to take away, or threaten to take away, the income-producing property of the taxpayer, does not say that there was no risk to the taxpayer. The danger to his income and income-producing property was there until the matter was concluded, and it was not concluded until there was a readjustment of his income-producing holdings.

The Government further contends, however, that even though the legal fees incurred by the taxpayer in maintaining and conserving his income-producing property are deductible under Code Section 212(2), the fees paid his wife's attorneys are under no circumstances deductible. The taxpayer's liability for his legal fees and the legal fees for his wife would not have been incurred except for the necessity of the long and extended negotiations culminating in the preservation, maintenance and conservation of the taxpayer's income-producing property. They were incurred for that purpose and that purpose only.

The only test of deductibility provided for in the statute is whether or not the expenses were reasonable and proximately related to the management, conservation and maintenance of income-producing property. It makes no difference to whom they are paid.

In the Lykes case, supra, the Supreme Court stated [343 U.S. 118, 72 S.Ct. 588]:

"\* \* \* deductibility turns wholly upon the nature of the activities to which they relate. \* \* \*."

And in the Owens case, supra, the Court said [273 F.2d 256]:

"We do not think that the fact that the payment here was made to the wife's attorney has any determinant force. \* \* \*."

In view of the findings of fact of the District Court and the undisputed testimony in behalf of the petitioner we are of the view, the legal fees in the amount of $19,200, which were paid by the taxpayer for the protection and conservation of his income-producing property was properly deductible as claimed. The decision of the District Court is accordingly

Affirmed.