Harry L. DEEM and Joan L. Deem,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 6997.

United States District Court
D. Colorado.

Oct. 4, 1962.

Solomon Girsh, Denver, Colo., for plaintiffs.

Lawrence M. Henry, U. S. Atty., for the Dist. of Colorado, Denver, Colo., and Burton A. Schwalb, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

DOYLE, District Judge.

The plaintiffs, husband and wife, seek to recover amounts assessed by the Internal Revenue Service following their having claimed deductions for the tax year

1956. The action arises under Title 28 U.S.C. § 1346 for the recovery of income taxes and interest alleged by the plaintiffs to have been wrongfully assessed against them.

On their joint 1956 federal income tax return plaintiffs deducted $3,000.00 as attorney's fee and $350.00 as sales and gasoline taxes. The Commissioner of Internal Revenue disallowed the $3,000.00 deduction, and reduced a $350.00 deduction for sales and fuel taxes to $250.00. As a result of these disallowances there was assessed against the plaintiffs the sum of $2,418.00, which amount was paid on January 11, 1960. On February 5, 1960, plaintiffs filed a claim for refund and this was disallowed on July 18, 1960. The amount of the assessment attributable to the disallowance of the attorney's fee is $2,340.00 in taxes and $383.70 in interest. The amount of the assessment attributable to the disallowance of the sales and fuel tax is $78.00 in tax and $12.80 in interest.

A divorce action was instituted August 5, 1955 by G. Louise Deem, former wife of plaintiff Harry L. Deem. Harry L. Deem did not object to the divorce, and this phase of the action was noncontested from the outset. There was, however, very considerable conflict with respect to property division and extensive negotiations took place which had to do with the amount and form of property division and the support of the children. Some of this is evidenced by correspondence between the attorney for Harry L. Deem and the plaintiff in the divorce action. One such letter is in evidence and undertakes to set forth in detail the demands which were then made by the wife. One of these was that all of the property then jointly owned by the parties should be divided equally between them. Another demand was that the home be retained by the then Mrs. Deem in lieu of temporary and permanent alimony. A further demand was that Harry L. Deem contribute the sum of $500.00 per month in support of the children.

The evidence adduced at the trial reveals that at the time of the demand Harry L. Deem owned property which produced very substantial income. He derived $100,000.00 per year from a one-half interest in the Star Beverage at San Diego, California; he also owned a substantial interest in the Seven Up Bottling Company in Denver and in Pueblo. These latter interests were capable of producing approximately $50,000.00 per year. His then wife owned 24 per cent. of the Denver Seven Up Bottling Company and had a 33⅓ per cent. interest in the Pueblo Seven Up Bottling Company. These were interests which had been given to her by plaintiff, Harry L. Deem.

Other evidence established that approximately eighty per cent. of the legal work performed in connection with the divorce case was devoted to obtaining a property settlement. The Government does not dispute the fact that the property division constituted the substantial part of the legal services performed.

After extensive negotiations an agreement was finally reached on December 5, 1955. Under its terms the plaintiff, Harry L. Deem waived any rights which he might have had in the interests of Mrs. Deem in the Seven Up Bottling Companies in Denver and Pueblo. She received certain corporate stock, an automobile, and title to the home; in addition, there was a stipulation to pay her One Hundred Thousand Dollars over a five-year period and to make support payments for the benefit of the children. This agreement became part of an interlocutory decree entered June 18, 1956. This became final under the then Colorado divorce statute six months later (on December 18, 1956).

Harry L. Deem testified that he paid the attorney for his former wife the total sum of $6,500.00. He paid his own attorney a total of $5,000.00—$2,000.00 of which was allocated to the divorce proceedings, and $3,000.00 of which was allocated to services in connection with the property division.

The issues of law presented for determination are: 1) whether the attorney's fee in the amount of $3,000.00 paid in

the year 1956 by the plaintiff to his lawyer in the divorce case was deductible as an expenditure for the conservation and maintenance of income-producing property within the meaning of Section 212(2) of the Internal Revenue Code; and 2) whether plaintiff is entitled to the full deduction in the amount of $350.00 for sales and fuel taxes for the year 1956.

## I.

### THE DEDUCTION FOR ATTORNEY'S FEE

The pertinent statute is Title 26 U.S.C. § 212, which provides: "In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—(1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax."

Plaintiffs, of course, maintain that the expenditure for attorney's fee was directly related to the conservation of property held for the production of income within the meaning of the quoted section. The Government's position is that the questioned item is within the express provision of Title 26 U.S.C. § 262, which expressly prohibits deduction of personal, living and family expenses, and which provides as follows: "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."

From a reading of Section 212, supra, it appears that the determinative standard is whether the expense is necessary and is directly related to the conservation or maintenance of income-producing property.

It is, of course, clear that if the litigation with respect to which the attorney's fee is paid is concerned with personal status, it is by the express terms of Section 262, supra, not deductible. Therefore, the ultimate issue is whether in fact the expenditure was so closely related to the preservation of income-producing property as to be within the terms of Section 212(2), and, seemingly, the fact that it arises incidental to a divorce action, which is a personal status law suit, does not of itself render the expenditure non-proximate to preservation of property.

This question has been decided in favor of the taxpayer in the Eighth, Sixth, Fifth and Fourth Circuits, and also in the Court of Claims. See: Baer v. Commissioner, (8 Cir.) 196 F.2d 646; Bowers v. Commissioner, (6 Cir.) 243 F.2d 904; Owens v. Commissioner, (5 Cir.) 273 F.2d 251; McMurtry v. United States, 132 F.Supp. 114, 132 Court of Claims 418, and Patrick v. United States, (4 Cir.) 288 F.2d 292.

In an opinion by the Chief Judge in Baer (which is the leading authority) it was held that the petitioner there was entitled to deduct a sum paid to his attorneys in divorce proceedings. This was on the theory that the expenditure conserved and maintained income-producing property. The Court held that a genuine threat to income-producing property existed by reason of the demands of the wife. She was there seeking a lump sum payment exceeding One Million Dollars. If the taxpayer had been compelled to pay this he would have been forced to relinquish control of an important source of income and it was this factor which moved the Court to conclude that the activities of the attorneys were directed to the conservation and maintenance of property held for income-producing purposes.

Similarly, in Patrick, it was found that the divorce proceedings placed all of the taxpayer's income-producing property in great peril unless a satisfactory settlement was concluded. Based upon this fact, it was held that the expenses were reasonable and proximate to the management, conservation and maintenance of the taxpayer's property. The taxpayer controlled a family publishing corporation. The Court said that there was a threat to plaintiff's control even though the wife had not made a direct demand

with respect to his stock in this corporation.

In McMurtry, the Court of Claims held that the taxpayer was entitled to make a showing as to the extent that incurred legal expenses tended to conserve and maintain income-producing property. The Court there said: "The expenditures must have had a proximate relation to this purpose." In outlining the applicable criteria, the Court of Claims stated that the following would be relevant: The husband's total financial structure and income and the impact the wife's demands might have had thereon; secondly, to show approximately what proportion of the legal services were utilized in resisting his wife's demands against specific income-producing property and in protecting his tenure in a fees-paying corporate directorship; and, thirdly, to show the extent that the legal services were used for other phases of the case.

The Government's main reliance is on Lykes v. United States, 343 U.S. 118, 72 S.Ct. 585, 96 L.Ed. 791, wherein an effort was made to deduct attorneys' fees expended in connection with *inter vivos* gifts. The Supreme Court held that the stock transfers and attorneys' fees paid in connection therewith were not even incidentally related to management, conservation, or maintenance of property held for the production of income. The Court went on to say:

> "Legal expenses do not become deductible merely because they are paid for services which relieve a taxpayer of liability. That argument would carry us too far. It would mean that the expense of defending almost any claim would be deductible by a taxpayer on the ground that such defense was made to help him keep clear of liens whatever income-producing property he *might* have. For example, it suggests that the expense of defending an action based upon personal injuries caused by a taxpayer's negligence while driving an automobile for pleasure should be deductible. Section 23(a)(2) never has been so interpreted

by us. It has been applied to expenses on the basis of their immediate purposes rather than upon the basis of the remote contributions they might make to the conservation of a taxpayer's income-producing assets by reducing his general liabilities. See McDonald v. Commissioner, supra, 323 U.S. [57] at pages 62–63, [65 S.Ct. [96] at page 98, 89 L. Ed. 68]."

Thus the Supreme Court did not rule out deduction of attorney fees expended in non-trade or business endeavor. The decision merely disapproves deduction of such payments where the object is personal.

The other case which the Government considers significant is the decision of the Second Circuit in Lewis v. Commissioner, (2 Cir.) 253 F.2d 821. Here the expenditure was for a variety of litigation which had been brought by the wife, including incompetency proceedings, plus a separate maintenance action. The basis for the court's decision was the remoteness of the services rendered to the preservation of income-producing property. It is noteworthy, of course, that much of the lawyers' efforts were devoted to protection of the plaintiff against the impact of the described personal litigation. The court went on to say that the effect upon the trade or business of the plaintiff was incidental rather than direct, that the real thrust of the litigation was personal and it was, therefore, within the terms of then Section 24(a)(1), I.R.C. (Section 262).

The conclusion to be drawn from these authorities is that closeness or remoteness of relationship between the service rendered and conservation and maintenance of income is the recognized touchstone here. Remote, or even closely incidental relationship is insufficient. But more than that is present. Here the wife in the divorce action first demanded a one-half division of all property owned by the plaintiff. This would have, of course, excluded her percentage interest in the Seven Up Bottling companies in Denver and Pueblo. This de-

mand would have encompassed Harry Deem's fifty per cent. interest in Star Beverage in San Diego. This latter holding, according to the undisputed evidence, produced One Hundred Thousand Dollars and was Harry Deem's major source of income. The invasion of this interest would have upset Deem's control and very likely would have affected his income from this source. Even if he had been called upon to furnish equivalent cash it can not be said that this major source of income would not have been affected adversely. Furthermore, her equities were increased as was his vulnerability by the fact that the marriage had been of fairly long standing and that there were two children. Also to be inferred from the evidence is the fact that Harry Deem seemed anxious to have the divorce. This also increased his peril of loss. Thus, the conclusion is inescapable that Deem was justified in feeling apprehensive and in deciding that an attorney was essential to the preservation of his capital. If the matter had gone into litigation it would have been impossible to predict the outcome. As a consequence of all of this, he was unquestionably most interested in a non-disruptive settlement. It must be, therefore, concluded that the expenditure in question was directly and proximately related to the preservation of Deem's income. Accordingly, it was a necessary and reasonable outlay within the meaning of the section in question.

■ An alternative request of the Government is that there be an across-the-board sixty-forty allocation spread over the two taxable years of this deduction. This is notwithstanding that the $2,000.00 attributable to the divorce was paid and was taxable in 1955, whereas the $3,000.00 in question was paid and deduction was made in 1956. The evidence indicates that the division was deliberate and that it was treated in this fashion because of the fact that the taxpayer and his attorney believed that the allocation was fair and reasonable and that it was peculiarly divisible in view of the fact that the final divorce was not entered until 1956 and the plaintiff in that action could have set it aside on her own motion at any time prior to the final entry. Had this action been taken the property settlement division could have been upset. Therefore, there was continuing hazard and a continuing need for standby legal services until such time as the final judgment was entered. In view of this fact the mechanics of division, payment, and deduction need not be disturbed.

## II.

### THE DEDUCTION FOR SALES TAX AND FUEL TAX

■ It will be recalled that the Internal Revenue Service disallowed One Hundred Dollars of $350.00 claimed by the taxpayer. Little evidence was offered to satisfy the plaintiff's admitted burden to show that the $350.00 deduction was reasonable. The evidence offered consisted of testimony by Deem that he purchased during the taxable year, a new Chrysler automobile, the cost of which was approximately $5,000.00 and that he also purchased necessary furniture for a new home. He made no attempt to break down his purchases so as to show that he had actually paid $350.00 in sales tax. However, his testimony of substantial purchases subject to sales tax would appear to be sufficient to justify the claimed deduction in the amount of $350.00. First, it is essential to notice that Deem's income was very considerable and this strongly suggests the likelihood of substantial purchases. The $5,000.00-automobile would have required the payment of either two or three per cent. sales tax, and the high cost of furniture is so well and generally known as to demand that it also be recognized as calling for substantial sales tax outlay. It is concluded on this point that the deduction was fair and reasonable and should not have been reduced.

It is concluded that plaintiff is entitled to judgment in respect to the attorney's fee item in the amount of $2,340.00 plus $383.70 in interest. In respect to the sales and fuel taxes, plaintiff is entitled

to judgment in the amount of $78.00 plus $12.80 assessed interest. It is

ORDERED and directed that judgment be entered in accordance with these findings and conclusions.