Robert E. Clark and Mary B. Clark v. Commissioner.
Clark v. Commissioner
Docket No. 2192-69.
United States Tax Court
T.C. Memo 1971-61; 1971 Tax Ct. Memo LEXIS 270; 30 T.C.M. (CCH) 259; T.C.M. (RIA) 71061; March 30, 1971. Filed *270 Held: (1) Petitioner Robert failed to establish that he employed a cash basis of accounting in the operation of his sole proprietorship engaged in the distribution of filtration equipment and consequently is not entitled to deductions for payments made on business obligations incurred prior to the taxable years. (2) For want of substantiation, petitioners are not entitled to deductions for automobile expenses incurred in connection with the servicing of rental properties in excess of $300 for each of the taxable years allowed by respondent. 260 (3) Petitioners have not established that the transfer by Robert in 1966 of his 30 percent interest in Clark, Inc., for $2,000 of stock of Dunbar Metal constituted a nontaxable exchange within the provisions of section 368(a)(1)(B), I.R.C. 1954. (4) Petitioners are liable for the additions to tax provided by section 6653(a), I.R.C. 1954. Andrew J. Goodwin, Charleston Nat. Plaza, Charleston, W. Va., for the petitioners. Rudolf L. Jansen, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in petitioners' income taxes and additions to tax under section 6653(a) of the Internal Revenue Code of 1954[1] for negligence or intentional disregard of rules and regulations, for the calendar years 1965, 1966 and 1967, as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a)
1965
$ 784.48
$39.22
1966
1,399.00
69.95
1967
1,358.42
67.92
By an Amendment to Answer filed at the trial, respondent also asserted an addition to tax under section 6651(a) of the 1954 Code for failure to file a return for 1967. On brief, however, respondent has conceded this issue. Certain of the adjustments set forth *273 in the notice of deficiency were not contested and, accordingly, are not in issue. Also, concessions have been made by the parties with respect to other adjustments. Specifically, with respect to the petitioner Robert E. Clark, respondent conceded, on opening statement and brief, that "a deduction of $755.09 is allowable for the year 1967 as a section 162 travel expense." On reply brief, petitioners stated that they "do not contend any travel expense beyond that amount." Thus, the travel expenses of the petitioner Robert E. Clark, for the year 1967 are no longer an issue. In addition, petitioners did not assign error to respondent's determination of negligence or intentional disregard of rules and regulations under section 6653(a) and introduced no evidence with respect thereto at the trial. The issues remaining to be decided are as follows: (1) Whether petitioners are entitled to deductions in the amounts of $2,155.58, $1,579.25, and $149.14 for payments made in 1965, 1966 and 1967, respectively, on business obligations incurred prior to 1965; (2) Whether petitioners are entitled to deductions in the amounts of $790.55, $782.68 and $1,848.26 for payments made to the Twentieth *274 Street Bank of Huntington, West Virginia, in 1965, 1966 and 1967, respectively; (3) Whether petitioners are entitled to a deduction for automobile expenses incurred in connection with the servicing of rental properties in excess of $300 for each of the years 1965, 1966 and 1967 allowed by respondent; (4) Whether and to what extent, if any, the petitioner, Robert E. Clark, realized taxable gain in the year 1966 when he transferred his 30 percent stock interest in Clark Filter and Equipment Company to Dunbar Metal and Supply Company in exchange for $2,000.00 worth of the stock of Dunbar Metal and Supply Company; (5) Whether petitioners are liable for additions to tax for each of the years 1965, 1966 and 1967, under the provisions of section 6653(a) of the Internal Revenue Code of 1954. Findings of Fact Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioners Robert E. Clark and Mary B. Clark (hereinafter referred to as petitioners or Robert or Mary) are husband and wife and maintain their legal residence in Charleston, West Virginia. Petitioners *275 filed a joint Federal income tax return for the years 1965 and 1966, and filed a tentative joint Federal income tax return for the year 1967 with the district director of internal revenue at Parkersburg, West Virginia. 261 The Clark Filter Company (hereinafter referred to as Clark Filter) was formed as a sole proprietorship by Robert some time during the year 1954. Its principal business was the distribution of industrial filtration equipment. Clark Filter's source of products was through several franchises, the most significant of which were from Commercial Filter Corporation and Filterite Corporation. Robert operated Clark Filter primarily as a manufacturer's agent, whereby the company would solicit and accept orders for the manufacturer to ship and bill directly to the buyer. While the above method of doing business was Clark Filter's principal way of doing business it also maintained an inventory from which Robert would occasionally sell directly to the buyer. On or about May 1, 1964, pursuant to discussions between Robert and the owners of Dunbar Metal and Supply Company, Inc. (hereinafter referred to as Dunbar Metal), a new corporation was formed called Clark Filter *276 and Equipment Company, Inc. (hereinafter referred to as Clark, Inc.). Robert transferred the franchises he held in exchange for 30 percent of the stock of the new corporation and Dunbar Metal received the remainder of the stock. Robert remained personally liable for all the outstanding indebtedness of Clark Filter. These liabilities, according to a list thereof prepared by Robert on April 24, 1964 (exclusive of any indebtedness to the Fred McCorkle Machine Shop, hereinafter discussed), amounted to $7,901.14 and represented amounts owed by Clark Filter for the purchase of filters, gaskets, strainers and other items, as well as general operating expenses. In November, 1966, pursuant to an oral agreement between Robert and Dunbar Metal that Dunbar Metal acquire 100 percent control of Clark, Inc., Robert exchanged his 30 percent interest in Clark, Inc., for $2,000 worth of stock of Dunbar Metal, valued at $3.25 per share. Robert received additional Dunbar Metal stock worth $398.13 in 1967. In 1965, 1966 and 1967, as the result of legal actions instituted by certain of the creditors of Clark Filter and the garnishment of wages or salary owed him by Dunbar Metal, Robert paid $2,155.58, *277 $1,579.25 and $149.14, respectively, in satisfaction of business expenses of Clark Filter, the liability for which had been retained by him. One of the business creditors of Clark Filter was the Fred McCorkle Machine Shop (hereinafter referred to as McCorkle). As of November 6, 1963, Clark Filter was indebted to McCorkle in the amount of $4,000.00. McCorkle was owned by the McGinnis family, who also controlled the Twentieth Street Bank of Huntington, W. Va. In 1963, Robert applied to the Twentieth Street Bank for a $6,000 loan for general use in his business. The bank agreed to lend him the money if he would sign a note which would include the amount owed by him to McCorkle. Robert signed a note to the bank in the amount of $10,000 and also gave the bank a second mortgage on his home as security. The bank paid him $1,000 in cash and credited $5,000 to an account in the name of Clark Filter. The record herein does not disclose what disposition was made of the remaining $4,000 included in the $10,000 note. Subsequent to the execution of the $10,000 note, all payments thereon were made to the bank. No payments on the McCorkle indebtedness were ever made by Robert directly to McCorkle *278 and McCorkle has not made any demand upon Robert for payment of his indebtedness to it, since the note was signed. During the years 1965, 1966 and 1967, Robert made payments on the note to the Twentieth Street Bank in the amounts of $790.55, $782.68 and $1,848.26, respectively. On their returns for 1965 and 1966, petitioners claimed deductions including amounts described as "Paid on debts of Clark Filter Co." or "Am't pd Clark Filter Co. debts." On their "Tentative Return" for 1967, they claimed as itemized deductions the total amount of $3,700, without explanation or designation of categories. The respondent disallowed portions of the claimed itemized deductions, including amounts paid during the taxable years on business expenses incurred by Clark Filter in prior years. During the taxable years, Mary was a partner with her brother, James A. Bibby, Jr., and her mother, Mary C. Bibby, in a real estate investment business. She was responsible for the maintenance, renting and collection of rents of 18 rental properties containing 41 rental units. In connection with these duties Mary used her personal automobile to transport a maintenance man to and from the various properties which *279 were situated from 2 to 10 miles from petitioners' residence. On each of their returns for 1965 and 1966 petitioners claimed a deduction of $600 for "Car Expense on rental property." The 262 "Tentative Return" for 1967 contains no specific reference to such an expense. Respondent, on brief, concedes that petitioners are entitled to a deduction in the amount of $300 for each of the taxable years for automobile expenses incurred in the servicing of rental properties. Opinion The first issue involves the deductibility of certain payments made during the taxable years 1965, 1966 and 1967 on business obligations incurred prior to 1965. Under section 162(a)[2] of the Code, a taxpayer on the cash basis of accounting is entitled to deduct all ordinary and necessary expenses paid during the taxable year in carrying on a trade or business; a taxpayer on the accrual basis of accounting is entitled to deduct such expenses in the year they were incurred. Flood v. United States, 133 F. 2d 173, 178 (C.A. 1, 1943). *280 There is no dispute either as to the amount of the payments or that the expenses in question were ordinary and necessary expenses incurred in the operation of petitioner's trade or business prior to 1965. Respondent also concedes that "ordinary and necessary expenses incurred in a trade or business in prior years and paid in a current taxable year, by an individual taxpayer using the cash receipts and disbursements method of accounting, are deductible under section 162 of the Internal Revenue Code of 1954, even though the trade or business has been discontinued," citing Rev. Rul. 67-12, 1967-1 C.B. 29. See also Flood v. United States, supra; Morgan S. Kaufman, 12 T.C. 1114, 1118 (1949); Waters F. Burrows, 38 B.T.A. 236 (1938). The basic question, therefore, is whether petitioners were on the cash basis or accrual basis of accounting. If they were on the cash basis they are entitled to the deductions claimed; if they were on the accrual basis then the expenses in question were deductible only in the years they were incurred which, in the instant case, were prior to the taxable years. The petitioners have the *281 burden of establishing that they were on the cash basis. They have failed to sustain their burden. Robert testified that he reported the income of the proprietorship on the accrual basis and expenses on the cash basis. He offered no records whatever from which the method of accounting employed by him could be determined. Neither the books of account of the proprietorship nor the returns for any of the years prior to 1965 were offered in evidence. Nor did he offer any satisfactory explanation why such records were not offered. Failure to offer such material records suggests that they would not have been favorable to the petitioners. Wichita Terminal Elevator Co., 6 T.C. 1158, affd. 162 F. 2d 513 (C.A. 10, 1947); Samuel Pollack, 47 T.C. 92, 108, affd. 392 F. 2d 409 (C.A. 5, 1968); Jean V. Kresser [Dec. 30,294], 54 T.C. 1621, 1630 (1970). To accrue income prior to receipt and defer the deduction of expenses until paid would not accurately reflect taxable income. The use of such a "hybrid" method of accounting has long been considered improper. Massachusetts Mutual Life Insurance Co. v. United States, 288 U.S. 269, 273-274 (1933); *282 Hygienic Products Co. v. Commissioner, 111 F. 2d 330 (C.A. 6, 1940), affirming 37 B.T.A. 202, certiorari denied 311 U.S. 665 (1940). Moreover, contrary to Robert's testimony that he did not use a "large" amount of inventory, the evidence submitted (see Petitioner's Exhibits 5 and 10) indicates that from $6,000 to $10,000 of the indebtedness involved (including the indebtedness owed McCorkle) represented the purchase of numerous items, such as filters, gaskets, strainers, etc., used in carrying on the business of the proprietorship. The use of such inventory required that he maintain his accounts on an accrual method of accounting. Section 1.446-1(c)(2)(i), Income Tax Regulations.[3] 263 The petitioners have not only failed to prove that they employed the cash basis of accounting but the evidence indicates *283 that the accrual basis was the only proper one for them to have used. A & A Tool & Supply Co. v. Commissioner, 16 T.C. 295, 322 (1951). Section 461(a) provides: SEC. 461. GENERAL RULE FOR TAXABLE YEAR OF DEDUCTION. (a) General Rule. - The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income. As stated in section 1.461-1(a)(3) of the Income Tax Regulations: A taxpayer may not take advantage in a return for a subsequent year of his failure to claim deductions in a prior taxable year in which such deductions should have been properly taken under his method of accounting. We sustain respondent's determination with respect to the amounts involved in the first issue. The second issue also involves business obligations incurred by Clark Filter, the sole proprietorship, prior to 1965. Our holdings under the first issue with respect to petitioners' method of accounting are equally applicable here. In addition, the evidence presented shows that the amounts sought to be deducted were paid to the Twentieth Street Bank pursuant to *284 the note executed November 6, 1963. Petitioners made no payments directly to McCorkle during the taxable years and there is no reliable evidence that the bank received such payments simply as a conduit. Other than a deposit slip showing the payment of $1,000 in cash and the deposit of $5,000 to an account in the name of Clark Filter Company on November 6, 1963, petitioners offered no records of the bank relating to the treatment of the proceeds of the $10,000 note. Nor did they call any witness connected with the bank or McCorkle. Here again, it is reasonable to assume that such records or testimony would not have been favorable to petitioners' contentions. Whether or not the bank immediately paid or credited the remaining proceeds of the note to McCorkle, as appropriate banking procedures, absent other proper instructions, would seem to have dictated, petitioners considered their indebtedness to McCorkle as having been satisfied and McCorkle thereafter made no demands upon petitioners for payment. Even if petitioners had been on a cash basis, it is well established that the payment of deductible expenses by a cash basis taxpayer with borrowed funds, or payment thereof by someone *285 else whom he is obligated to repay, would not permit the postponement of the deduction for such expenses to the year in which the borrowed funds or loans were repaid. Robert B. Keenan, 20 B.T.A. 498 (1930); Irving Segall, 30 T.C. 734 (1958); Patrick v. United States, 186 F. Supp. 48, 52 (W.D.S.C., 1960), affd. 288 F. 2d 292 (C.A. 4, 1961), reversed on other grounds 372 U.S. 53 (1963); William J. Granan, 55 T.C. 753 (1971). For the reasons discussed under the first issue, as well as here, we sustain respondent's determination with respect to the amounts involved under the second issue. The third issue presents the question whether petitioners are entitled to deductions for automobile expenses incurred by Mary in connection with the servicing of rental properties, in excess of $300 which respondent has conceded for each of the years 1965, 1966, and 1967. Mary was a partner in a real estate investment business. She was responsible for the maintenance, renting and collection of rents of 18 rental properties containing 41 rental units owned by the partnership. In connection with these duties she used her *286 personal automobile to transport a maintenance man to and from the various properties. Four of the properties were located 6, 8, 9 and 10 miles, respectively, from petitioners' residence; the remaining 14 were from 2 to 4 miles distant. No records or other evidence was offered showing the number of trips made by Mary, the dates they were made, the properties visited, the mileage covered or the expenses incurred. In the absence of such material evidence, we hold that petitioners have failed to establish that they are entitled to deductions in excess of $300 for each of the years involved. The fourth issue involves the question whether the petitioner Robert E. Clark realized taxable gain in the year 1966 when 264 he transferred his 30 percent stock interest in Clark Filter and Equipment Company to Dunbar Metal and Supply Company in exchange for $2,000 worth of the stock of Dunbar Metal and Supply Company. In the explanation attached to the notice of deficiency, respondent stated: (h) It is determined that you received $2,000.00 from sale of stock of your employer which you had acquired in 1963. The income is taxable gain subject to the deduction provided by section 1202 of the Internal Revenue Code *287 : Amount received
$2,000.00
Basis in stock 0
Gain
$2,000.00
Less: Section 1202 deduction 1,000.00
Taxable gain
$1,000.00
Petitioners did not specifically assign error to this determination in their petition. The only challenge which they appear to have made in their pleadings was to respondent's assignment of a zero basis to the stock transferred. In their statement of "facts upon which the petitioners rely" [paragraph 5(e) of the petition] they alleged: (e) In the year 1966 the Commissioner determined that your petitioner, Robert E. Clark, had a long term capital gain of $1,000.00 when the petitioner sold his 30% interest in Clark Filter & Equipment Co., Inc. in return for $2,000.00 of the capital stock of Dunbar Metal & Supply Co., Inc. when in fact your petitioner had a taxable basis for said 30% interest which he acquired in May, 1964, which value could be determined at the time the Commissioner made his ruling, but it was ignored by the Commissioner and no value attempted to be affixed to this basis. Petitioner, who had the burden of overcomingg the presumptive correctness of respondent's determination, neither pleaded nor offered in evidence *288 at the trial, any facts upon which their basis in the stock transferred to Dunbar Metal in 1966 could be determined. In his opening statement made at the beginning of the trial, counsel for the petitioners for the first time referred to the transfer in 1966 as a "nontaxable exchange." No mention was made in the opening statement of the statute relied upon or of the facts essential to the establishment of a nontaxable exchange in 1966. Thereafter, petitioners appear to have abandoned their contention with respect to the 1966 transaction. On briefs, their entire discussion with reference to a nontaxable exchange was directed at the transaction in 1964 when petitioners transferred the franchises held by Clark Filter to Clark, Inc. No reference whatever was made to the 1966 transaction when Robert transferred his 30 percent interest in Clark, Inc. to Dunbar Metal. The year 1964 is not before us. In view of their positive and unmistakable references to the facts relating to the 1964 transaction, we do not feel called upon to determine whether the 1966 transaction constituted a nontaxable exchange. As was stated by the Supreme Court in Commissioner v. Scottish American Co., 323 U.S. 119 (1944): *289 The judicial eye must not in the first instance rove about searching for evidence to support other conflicting inferances and conclusions which the judge or the litigants may consider more reasonable or desirable. Moreover, careful scrutiny of all the evidence relating to the 1966 transaction reveals that petitioners, who have the burden of proof, have failed to establish that the stock exchanged in 1966 was "voting stock," as required by section 368(a)(1)(B), [4] or that the exchange was "solely" for voting stock. The transfer of additional stock of Dunbar Metal to petitioners in 1967, without explanation therefor, suggests a possible promise or commitment made in 1966 for the transfer of additional stock depending, for example, upon the successful operation of the corporation or petitioner continuing in its employment. *290 The exemptions for tax purposes provided by the reorganization statutes are a matter of legislative grace and are to be strictly construed. Lutkins v. United States, 265 312 F. 2d 803 (Ct. Cl. 1963). The terms "solely" and for "voting stock" leave "no leeway." Helvering v. Southwest Corp., 315 U.S. 194 (1942). For the various reasons discussed above we sustain respondent's determination with respect to the fourth issue. The final issue involves the question of petitioners' liability for additions to tax under the provisions of section 6653(a). Petitioners did not assign error to respondent's determination and offered no evidence relating to this issue at the trial. Accordingly, respondent is sustained on this issue. Decision will be entered under Rule 50. Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses * * * while away from home in the pursuit of a trade or business; and↩
3. § 1.446-1 General rule for methods of accounting. * * * (c) Permissible methods. * * * (2) Special rules. (i) In any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales unless otherwise authorized under subdivision (ii) of this subparagraph.↩
4. SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS. (a) Reorganization. - (1) In General. - For purposes of parts I and II and this part, the term "reorganization" means - * * * (B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of stock of another corporation if, immediately after the acquisition, the acquiring corporation has control of such other corporation (whether or not such acquiring corporation had control immediately before the acquisition);↩